225 N.J. Super. 439 (1987)
542 A.2d 952
STATE OF NEW JERSEY
v.
THOMAS PASSANTE, ROBERT TURCO, FELIX GENTILE, LAWRENCE MATURO, HERBERT WENSTRUM, KENNETH ZIEGLER, STANLEY SCHOFLER, LORI REGENSBURG, MICHAEL PANELLA, JOHN MORRA III, VINCENT PORZIO.
Superior Court of New Jersey, Law Division (Criminal), Bergen County.
November 12, 1987.
*441 Robert B. Donovan, Deputy Attorney General on behalf of the State.
Robert L. Galantucci, designated lead counsel for defendants, (Galantucci and Patuto, Esqs.; Philip DeVencentes and Robert M. Biagiotti on the brief).

DECISION ON MOTION TO DISMISS INDICTMENT
MOSES, J.S.C.
Defendants Turco, Gentile, Ziegler, Panella, Wenstrum and Schofler move to dismiss their respective Counts of a 23 Count indictment charging them with racketeering, conspiracy, bookmaking, criminal usury, promoting gambling, and drug related offenses, all in violation of New Jersey's Racketeering statute, N.J.S.A. 2C:41-1 et. seq., (2C RICO). This portion of the Court's decision deals specifically with defendants' allegations that 2C RICO is unconstitutional.

POINT I. THE RACKETEERING STATUTE.
2C RICO is patterned after the Racketeer Influenced and Corrupt Organizations (RICO) provisions of Title IX of the federal Organized Crime Control Act of 1970. 18 U.S.C.A. § 1961 et. seq. Careful scrutiny reveals, however, that it is broader than federal RICO as it is intended to cure some of the problems currently facing federal RICO.
New Jersey RICO incorporates by reference 23 types of state crimes and federal crimes under 18 U.S.C.A. § 1961 (1)(A), (B) and (D) under the umbrella concept of "racketeering activity". The statute provides that anyone found to have committed any two (2) of these incorporated offenses within a ten-year period *442 has undertaken a pattern of racketeering if the two "predicate offenses" are interrelated by "distinguishing characteristics".
2C RICO specifically prohibits (1) using income derived from a pattern of racketeering activity to acquire an interest in an enterprise affecting commerce, (2) acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity, (3) conducting the affairs of an enterprise through a pattern of racketeering activity and (4) conspiring to commit any of these offenses.
2C RICO has expanded the "enterprise as defendant" concept by expanding the definition of "person" to include an "enterprise as defined herein", which language is not found in the federal act. Under 2C RICO, a "person" may also be an "enterprise", therefore eliminating the need for civil plaintiffs to identify a separate enterprise through which prohibited activity was conducted. See Hirsch v. Enright Refining Co., Inc., 751 F.2d 628 (3 Cir.1984), (holding that enterprise and defendant must be separate under federal RICO).
In its definition of "enterprise", 2C RICO also includes "illicit as well as licit enterprises and governmental as well as other entities". This language is not found in federal RICO, and is the precise issue that the Supreme Court resolved in U.S. v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Further evidence of the broader scope of 2C RICO can be found in the its use of the term "crime-type activities", thereby precluding any doubts over whether enterprises formed wholly for unlawful purposes are included in its ambit.
2C RICO adds the requirement that to establish a "pattern of racketeering activity", there must be a "showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents", 2C:41-1(d)(2). This language is not found in the definitional sections of federal RICO, and reflects a legitimate legislative *443 expression that 2C RICO is designed to be more than a repeat offender statute.
2C RICO prohibits the use of the proceeds of an "unlawful debt" for the acquisition, establishment, maintenance or control of an "enterprise which is engaged in or activities of which affect [the] trade or commerce of New Jersey." N.J.S.A. 2C:41-2.
In a section prohibiting investment of racketeering income in an enterprise, 2C RICO adds the following statutory presumption, which is really a permissive inference: if "it is established that over half of the defendant's aggregate income for a period of 2 or more years immediately preceding the investment was derived from a pattern of racketeering activity," then the "investment included income derived from a pattern of racketeering activity". This provision is not found in federal RICO and eliminates the difficult problems which can be involved in tracing funds from a specific source into an investment. 2C:41-2(a)
2C RICO, like federal RICO, contains a liberal construction clause which eliminates in civil cases the argument that the statute is partially criminal in scope and should be strictly construed. 2C:41-6.

POINT II. NOTWITHSTANDING THE STATUTE'S INCIDENTAL EFFECT ON INTERSTATE COMMERCE, NEW JERSEY'S RICO DOES NOT VIOLATE THE FEDERAL COMMERCE CLAUSE.
Defendants first challenge the statute as unconstitutional because it violates the federal power to regulate interstate commerce. U.S. Const., Art. 1, sec. 8, cl. 3. They specifically argue that the statute criminalizes activity occurring outside its jurisdiction, and gives the state authority to direct the disposition and transfer of proceeds and property of interstate commerce. The State submits that the statute is valid under both the United States and the New Jersey Constitutions.
When evaluating the constitutional validity of a statute under both the United States and New Jersey Constitutions, a reviewing *444 court begins with the presumption that the legislature acted constitutionally in enacting the challenged statute. Clements v. Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), reh. den. 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982), on remand Fashing v. Moore, 689 F.2d 593 (5th Cir.1982); accord, Right to Choose v. Byrne, 91 N.J. 287 (1982). The burden of proof is on the party contesting the statute, and it is a heavy one. Levitt & Sons, Inc. v. Div. Against Discrimination in State Dept. of Ed., 31 N.J. 514 (1960) app. dism. 363 U.S. 418, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). A statute should not be struck where its constitutionality can be preserved by a reasonable state court construction. See St. Martin Evangelical Lutheran Church v. South Dakota, 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981); accord, Masters-Jersey Inc. v. Mayor & General Council of Borough of Paramus, 32 N.J. 296 (1960).
When passing federal RICO Congress was concerned with possible infringement of the states' police power. These concerns were expressed by the Supreme Court in United States v. Turkette 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). In Turkette, the Supreme Court reiterated that the federal government is one of specifically enumerated powers granted under the Constitution. As such, it has no inherent police power to fight organized crime. The court conceded that the RICO definition of racketeering activity included a significant number of acts made criminal under state law. Yet it was precisely to avoid encroaching on the states' sovereignty that Congress enacted RICO under their power to regulate interstate commerce. U.S. Const., Art. I, sec. 8, cl. 3. See generally, Comment, "The Scope of Federal Criminal Jurisdiction Under the Commerce Clause," (1972) U.Ill.L.R. 805, 806-807.
In order to avoid any conflict with state criminal laws, Congress expressly declared that RICO imposes no restrictions upon the criminal justice systems of the states. "Nothing in this title shall supersede any provision of Federal, State, or other law imposing criminal penalties or affording civil remedies *445 in addition to those provided for in this title". Turkette, 452 U.S. at 588, 101 S.Ct. at 2530, footnote 9, quoting Title IX, Sec. 904, 84 Stat. 947(b). In short, New Jersey has the right to fight organized crime within its own borders. Even without such an express reservation, this conclusion would be justified as this legislation goes to the core of the State's sovereign police powers under the Tenth Amendment.
The test to be applied when a state law is challenged as violating the federal commerce clause is whether the state legislation discriminates against or otherwise unduly burdens interstate commerce. Epstein v. Lordi, 261 F. Supp. 921 (D.C.N.J. 1966), affirmed 389 U.S. 29, 88 S.Ct. 106, 19 L.Ed.2d 29 (1967). The statute here goes to the heart of the state's police powers, and is not an exercise in economic protectionism. See Minnesota v. Clover Leaf Creamery Co. 449 U.S. 456, 471, 101 S.Ct. 715, 727, 66 L.Ed.2d 659 (1981), reh. denied 450 U.S. 1027, 101 S.Ct. 1735, 68 L.Ed.2d 222 (1981).
As such, the statute will be sustained if it is rationally related to a legitimate state end and if the state interest in enforcing the regulation outweighs any burden on interstate commerce. Glassboro v. Gloucester County Bd. of Chosen Freeholders, 100 N.J. 134, 142-151, cert. den. 474 U.S. 1008, 106 S.Ct. 532, 88 L.Ed.2d 464 (1985). New Jersey's RICO statute is rationally related to its stated purpose of preventing, disrupting and eliminating the infiltration of organized crime type activities into the commerce of this State.
In order for the federal RICO to apply, the activity of the target enterprise must have an effect on interstate commerce. U.S. v. Rone, 598 F.2d 564 (9th Cir.1979), cert. den. Little v. U.S., 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1979). Whereas, under a state RICO statute, the target enterprise must have an effect on the commerce of the state. It is clear that an incidental effect on interstate commerce is permissible under the commerce clause, so long as it does not burden it. Chamber of Commerce of U.S. v. State, 89 N.J. 131, 160-61 *446 (1982), Yellow Cab Co. of Camden v. State Through Director of Wage and Hour Bureau, 126 N.J. Super. 81 (App.Div. 1973).
At least 22 states have adopted some form of RICO. Baker, "Nationalizing Criminal Law", 16 Rutgers L.J. 498, (1985). In enacting their respective RICO statutes, these legislatures have closed the loophole which exists in Federal RICO when the target enterprise has little or no effect on interstate commerce by operating entirely within the State. In short, 2C RICO is aimed at a substantially different harm than Federal RICO.
In concluding that 2C RICO does not violate the federal power to regulate interstate commerce, the Court holds that the criminal enterprise, and not the individual predicate acts, must be amenable to our jurisdiction pursuant to N.J.S.A. 2C:1-3. This is unlike federal RICO, where the enterprise must be engaged in interstate commerce, but comports with the basic philosophy of RICO, that the "enterprise" and not the individual is the defendant.

POINT III. THE NEW JERSEY RICO STATUTE, WHEN PROPERLY CONSTRUED, IS NEITHER VAGUE NOR OVERBROAD, AND THUS IS CONSTITUTIONAL.
The defendants also argue that the statute violates the due process provisions of the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, section 1 of the New Jersey Constitution.
Although 2C RICO has not been previously construed in New Jersey, federal RICO has an extensive and detailed legislative history, which the federal courts have often interpreted. This being the case, even though vagueness and overbreadth challenges to federal RICO have been multitudinous, every federal court which has considered vagueness and overbreadth challenges to federal RICO has found the federal statute to be permissively broad and not unconstitutionally vague. These cases have included attacks on provisions parallel to those which defendants challenge here. See U.S. v. Boffa, 513 F. Supp. 444, 460-61 (D.C.Del. 1980) (survey of federal decisions addressing the due process/vagueness issue).
*447 The relevant test is whether the statute is so vague that a person could not reasonably understand that the contemplated conduct, as charged in the indictment, would be proscribed by the statute. U.S. v. National Dairy Corp., 372 U.S. 29, 32-33, 83 S.Ct. 594, 597-598, 9 L.Ed.2d 561 (1963), see also State v. Norflett, 67 N.J. 268 (1975). A statute must provide (1) fair notice of what is forbidden and (2) guidelines for enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-9, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972).
In determining the sufficiency of the notice, a statute must be examined in light of the conduct with which a defendant is charged. The test for vagueness is not whether there are marginal or remote cases in which its clarity may be in doubt, but whether it conveys an adequate warning in a specific situation. Williams v. U.S., 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951), U.S. v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1947). 2C RICO should not be evaluated in the abstract. See also Matter of De Marco, 83 N.J. 25 (1980).
For example defendants express confusion over the meaning of the term "gambling" in the list of crimes included in the definition of "racketeering activity". 2C:41-1(a)(1)(c). The meaning of the term is clear when placed into the context of the New Jersey Racketeering Statute. Cf. Denbo v. Moorestown Twp., 23 N.J. 476 (1957) (true meaning and intention of legislation must be derived from the whole act and not just component part). While gambling, per se, is not a crime under N.J.S.A. 2C:37-1 if the actor is solely a "player" and not rendering assistance to the operation of the enterprise, it is obvious that the legislature employed the generic term "gambling" to denote types of gambling activities, i.e. "bookmaking", which are criminal under the code. Furthermore, when the conduct to be prohibited is not fairly susceptible of definition in other than general terms, there is no constitutional impediment to use of such general language. In re State in Interest of B.N., 99 N.J. Super. 30 (App.Div. 1968).
*448 This Court is confident that the legislature never intended to permit the use of 2C RICO for what may be viewed as immoral activities, but which are not necessarily illegal in other jurisdictions, such as the "friendly card game" example that defendants posit. It therefore follows that conduct that is not criminal, such as being a mere "player", does not fall within the ambit of the New Jersey RICO statute.
Defendant next questions the definition of "unlawful debt" in 2C:41-1(e) because 2C RICO prohibits the use of the proceeds of an unlawful debt for the acquisition, establishment, maintenance or control of an "enterprise which is engaged in or activities of which affect [the] trade or commerce of New Jersey" N.J.S. 2C:41-2. 2C RICO attempts to end the potential confusion in the definition of "unlawful debt" found in federal RICO by simply eliminating the last two of the four parts found in the federal statute. The definition contained in 2C RICO is therefore broader because it is not confined solely to "gambling related activity." In finding this provision not vague the Court applies a general rule of statutory construction, that where a language of a statute is clear and unambiguous on its face, a reviewing court need delve no further to determine the intent of the Legislature. State v. Butler, 89 N.J. 220 (1982).
The definition of "unlawful debt" and its use elsewhere in the statute are indeed clear and unambiguous, and provide a defendant with ample notice of the proscribed conduct. Id.; Grayned v. City of Rockford, supra; State v. Lee, 96 N.J. 156 (1984). The terms "collection of an unlawful debt" is likewise unambiguous and capable of comprehension by a reasonable person.
Defendant also challenges the use of the term "enterprise" at 2C:41-1(c). Despite the fact that this definition includes at least eleven illustrations of its subject, defendant claims that the term lacks clarification. The Court is convinced that this definition gives a person of ordinary intelligence abundant opportunity to know what the statute proscribes. Grayned v. *449 City of Rockford, supra; State v. Lee, supra. See also N.J.S. 2C:41-2 (prohibited activities).
Since it is obvious that the New Jersey Legislature borrowed the definition of "enterprise" from the federal RICO statute, 18 U.S.C. § 1961(4), it is permissible to look to that statute for guidance in interpreting the state RICO statute. GATX Terminals Corp. v. N.J. Dept. of Environmental Protection, 86 N.J. 46 (1981) Although New Jersey's definition of "enterprise" is facially more encompassing than that contained in the federal RICO statute, it comports with Court decisions which expanded the federal definition of "enterprise" to include e.g., illicit enterprises, (U.S. v. Turkette, 452 U.S. 576, 101 S.Ct. 2524); the Philadelphia traffic court, (U.S. v. Bacheler, 611 F.2d 443 (3rd Cir.1979)) and a County Sheriff's Department, (U.S. v. Baker, 617 F.2d 1060 (4 Cir.1980)). Courts have consistently held that the definition of "enterprise" in the federal statute may be broad, but it is not vague. See U.S. v. Aleman, 609 F.2d 298, 305 (7 Cir.1979), cert. den. 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980), U.S. v. Swiderski, 593 F.2d 1246 (D.C. Cir.1978), cert. den. 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979).
This Court concludes that 2C RICO afforded defendants adequate notice that their conduct was proscribed. Any reasonable person would realize that if he pursued the course of activity attributed to defendants by their indictments, that he or she would be conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity. See U.S. v. Hawes, 529 F.2d 472, 479 (5th Cir.1976).
Defendants also argue that the statute is overbroad. An "overbroad" statute is one that "does not aim specifically at evils within the allowable area of state control, but on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise" of protected First Amendment rights. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 741, 84 L.Ed. 1093 (1940).
*450 What the defendants fail to realize is that 2C RICO does not make conduct criminal that was not already prohibited before its enactment. It was intended to serve as a remedial statute, providing enhanced criminal and civil sanctions for conduct prohibited by existing state and federal law. The two requisite predicate acts which constitute the pattern of racketeering activity are not "new crimes".
Defendants' overbreadth argument is closely related to their vagueness argument. They contend that those subject to the Act will not be able to tell what is prohibited, and may be afraid to exercise First Amendment (associational) rights that are arguably within the sweep of the Act. Defendants' implication is that 2C RICO should only apply when all the defendants and all the victims were in New Jersey and all of the conduct occurred in New Jersey. This flies in the face of common sense and against the remedial nature of the Act. Of course the Act does not apply to situations where the enterprise, its members, and the predicate acts are not amenable to our jurisdiction. But, to recognize defendants' arguments would allow New Jersey to be used as a "base" for organized crime.
The Legislature realized that control of organized crime has not been and cannot be achieved by traditional criminal code provisions and standard law enforcement procedures. Commentators have noted that prosecution of an individual for a specific offense devalues the crime's significance when the individual is actually a member of organized crime, because convicted organized crime members are often easily replaced by another participant in the criminal organization. Herman, "Organized Crime and White Collar Crime: Prosecution of Organized Crime Infiltration of Legitimate Business", 16 Rutgers L.J. 630 (1985). The overbreadth doctrine is clearly inapplicable here, because 2C RICO does not punish association alone, but can only be applied if the individual who associates also commits two of the predicate acts specifically enumerated, which furthers the enterprise.
*451 Based upon the foregoing, defendants' motions to dismiss the indictments as violating the Commerce Clause, or as vague and/or overbroad are denied.