249 N.J. Super. 411 (1991)
592 A.2d 608
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD SPARANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1991.
Decided July 8, 1991.
*413 Before Judges LONG, R.S. COHEN and STERN.
Mark Catanzaro argued the cause for appellant (Jerome A. Ballarotto, attorney).
*414 Jay Hindman, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General of New Jersey, attorney; Jay Hindman, of counsel and on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Defendant pled guilty to conspiracy to manufacture and distribute cocaine and methamphetamine, N.J.S.A. 2C:5-2 and N.J.S.A. 24:21-24; racketeering, N.J.S.A. 2C:41-2c; and income tax evasion, N.J.S.A. 54A:9-15(a). Pursuant to the negotiated disposition, thirteen other counts were to be dismissed, a maximum custodial recommendation was made by the Attorney General, defendant agreed to testify against others, and the parties advised the plea judge that if they could not agree on the amount of forfeiture pursuant to the racketeering conviction (see N.J.S.A. 2C:41-3b), the "forfeiture issue would be brought before a jury."[1]
At the time of plea, defendant admitted his involvement with his brother Dennis and others "in the illegal manufacture and distribution of CDS" and "particularly methamphetamine during the time period as stated in the indictment, roughly 1983 through 1987." He further admitted "the ordering of certain precursors for the manufacture of methamphetamine" including participation in the purchase of "[a]pproximately five gallons" of P2P and the purchases of P2P from his brother Dennis. He further admitted manufacture and distribution with others for profit and income tax evasion between January 1, 1984 and April 15, 1985.
The parties were unable to reach an agreement regarding the amount of forfeiture, and that matter was ultimately tried to a *415 jury. The jury returned a special verdict, as required by N.J.S.A. 2C:41-3f, finding that defendant had "an interest, directly or indirectly," in the marital residence at 8 Kristin Way, Hamilton Township, a condominium unit in the Grandville Arms, 516 Silver Court, Hamilton Township, and $298,917 in currency, and that his interest in each "derive[d], c[a]me from, or result[ed] from proceeds, monies or cash obtained or realized directly or indirectly as a result of [his] admitted violation of the New Jersey racketeering law." The jury further concluded that "[a] hundred percent" of each of these items should be forfeited.[2]
Consistent with the negotiated plea, defendant was subsequently sentenced to concurrent ten-year sentences on counts one and two, with a four-year period of parole ineligibility on count one. On count three, a term of eighteen months was imposed, to be served consecutively with the sentences on counts one and two.[3] No final judgment of forfeiture pursuant to N.J.S.A. 2C:41-3c is included in the record, although an order restraining the sale, conveyance or disposition of the real properties *416 has been entered. We are told that actual forfeiture has been stayed pending this appeal.
On this appeal, addressed only to the forfeiture issues, defendant argues:
POINT I DEFENSE COUNSEL WAS INEFFECTIVE AND THUS THE DEFENDANT WAS DEPRIVED OF A FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AS WELL AS ARTICLE I PARAGRAPH 7 OF THE NEW JERSEY CONSTITUTION.
POINT II THE COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN ADJOURNMENT.
POINT III PERMITTING DENNIS SPARANO TO TESTIFY AS AN EXPERT WITNESS WAS PLAIN ERROR.
POINT IV THE TRIAL COURT ERRED IN QUALIFYING AND PERMITTING INVESTIGATOR ANTHONY HIGHAM TO TESTIFY.
POINT V THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL.
POINT VI THE STATE'S CLOSING ARGUMENT EXCEEDED ALL BOUNDS [OF] PROPRIETY THEREBY PREJUDICING DEFENDANT[']S FUNDAMENTAL RIGHT TO A FAIR TRIAL.
POINT VII THE TRIAL COURT ERRED IN DECLINING TO CHARGE A PRESUMPTION OF NON-FORFEITURE.
POINT VIII THE TRIAL COURT'S CHARGE IMPERMISSIBLY SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT.
Our review of the record leads us to conclude that these contentions and the arguments in support of them are without merit and do not warrant extended discussion, R. 2:11-3(e)(2), except as noted herein with respect to some aspects of several of the points.
The primary issue in the trial was whether defendant's interest in the $298,000 cash and the real properties were directly or indirectly derived from his admitted illegal drug business. The State endeavored to prove that defendant's expenditures during the period covered by the indictment far exceeded his known legitimate sources of income, while defendant contended that he and his wife, Donna, had generated considerable (although not necessarily reported) cash income from legitimate business ventures. Suffice it to say that there was more than sufficient evidence presented at the eight day trial to permit the finding *417 that defendant's income far exceeded his earnings from legitimate sources.
Anthony Higham, an accountant/investigator with the Narcotics Task Force who did a source and expenditure of funds analysis on the Sparanos "from 1982 through 1987," concluded that they spent "$353,000 ... in excess of known funds" during that period. Defendant did not deny the fact that he failed to report income; in fact, he pled guilty to one count of the indictment to that effect. His defense was that the income he failed to report was from legitimate cash businesses unrelated to his drug activities. However, through counsel, he acknowledged that defendant was "in the narcotics business to make profit. And, in fact, he admitted before this Judge he was." He subsequently argued to the jury that "I said to you there was some profit. And I almost say, unfortunately, it's your burden to find out what that profit is." In other words, while he did not and could not deny that he benefitted economically from his illegal narcotics activities, he emphasized the State's burdens with respect to relating them to the property the State sought to forfeit by virtue of the allegations in count two of the indictment.
The State offered the testimony of defendant's brother, Dennis, who testified regarding his knowledge of defendant's legitimate business ventures, including an arcade game business ("Space Station") and liquor store (Mercer Wines and Liquors) which he concluded were unsuccessful. He testified that defendant "lived good,", "wanted for nothing" and lived off "the drug business."[4] Dennis testified that during the relevant period he and others sold P2P to defendant for the manufacture *418 of methamphetamine. Defendant did not testify, although his wife and parents did.

I.
Defendant argues that he was denied effective assistance of counsel because his trial attorney inadequately investigated and prepared the case. Before entering his guilty plea, defendant moved for leave to substitute new counsel for the trial. The court denied the motion, finding that the substitution at the late date when the trial was "very ready to proceed" would result in many "problems" and that the motion was motivated by a desire to postpone the proceedings.[5]
At the subsequent plea, defendant stated in the plea form that he was satisfied with counsel's representation. The same appeared to be the case during the in-court proceedings. No question about counsel was thereafter raised until four months later when the forfeiture proceeding was scheduled to begin. Defendant again moved for an adjournment in order to allow him to retain new counsel. The judge found that defendant was "again" trying to postpone the case "on the eve of trial." During the trial, defendant retained present counsel to assist with the financial aspects of the case. Present counsel, in fact, cross examined Investigator Higham and conducted the direct examination of Donna Sparano, her friend and her mother. He was also active in discussions and objections regarding the charge and objections to the State's summation.
In order to show ineffective assistance of counsel:
First, the defendant must show that counsel's performance was deficient This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *419 Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable. [Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)].
However, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...", 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694, and a defendant must show that there is "a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The Strickland standard has been held applicable with respect to claims of ineffective assistance of counsel under our State constitution. State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987).
The record does not support defendant's conclusion that the Strickland standard has been satisfied. Further, some of the judge's statements in denying adjournments suggest findings to the contrary with respect to some of the claims. But we cannot speculate as to the reasons for counsel's conduct or accept without a more fully developed record the State's explanations for that conduct.
Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal. Rather, defendant must develop a record at a hearing at which counsel can explain the reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice. See State v. Fritz, supra, 105 N.J. at 67, 519 A.2d 336; State v. Savage, 120 N.J. 594, 609-626, 577 A.2d 455 (1990); State v. Deutsch, 229 N.J. Super. 374, 376, 389, 551 A.2d 991 (App.Div. 1988) (decisions after remand). See also United States v. Gambino, 788 F.2d 938, 950-951 (3rd Cir.1986), cert. den. 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986). Thus, while we conclude that this record is inadequate to support defendant's claim, our affirmance is without prejudice to defendant's petition for post conviction relief on the subject. We add, however, *420 that we imply no view of the merits and see no basis for any further stays pending those proceedings.

II.
We cannot conclude that the trial judge abused his discretion in declining to adjourn the forfeiture trial. At the time of plea defendant knew there would have to be a trial if negotiations did not culminate in an agreement as to the amount of forfeiture. Over four months elapsed following the plea without an agreement as to forfeiture. Despite defendant's stated dissatisfaction with counsel in advance of the originally scheduled guilt phase, he maintained the same attorney to negotiate the amount of forfeiture after the plea. Defendant did not endeavor to substitute counsel during that period.
Given the assertion that defendant was dissatisfied with counsel just prior to the scheduled guilt phase, we can understand the trial judge's reaction to a similar adjournment application made at the commencement of the forfeiture proceedings. We find no reversible error in the trial judge's refusal to adjourn the trial. See State v. Ferguson, 198 N.J. Super. 395, 401-402, 487 A.2d 730 (App.Div.), certif. denied 101 N.J. 266, 501 A.2d 933 (1985); State v. Lamb, 125 N.J. Super. 209, 213, 310 A.2d 102 (App.Div. 1973).

III.
Defendant argues that his conviction must be reversed because his brother, Dennis, was permitted to testify that he pled guilty and forfeited over $1,000,000 worth of assets as substantive evidence of defendant's guilt, and because his brother was, in effect, permitted to testify "as an expert witness" regarding defendant's business operation and illegal drug activities.
We, of course, agree with defendant that post-conspiratorial statements, including a plea or testimony, of a co-conspirator *421 are not admissible against defendant. See Evid.R. 63(9). See also e.g. State v. Phelps, 96 N.J. 500, 510, 476 A.2d 1199 (1984); Bisaccia v. Attorney General of N.J., 623 F.2d 307, 312 (3rd Cir.1980), cert. denied 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). However, the challenged testimony was not presented as substantive evidence of defendant's guilt of a conspiracy but as bearing on fact questions relating to defendant, his sources of income and whether his property was purchased from sources other than illegal drug proceeds. The fact that Dennis pled guilty and forfeited funds may not have been relevant, but his knowledge of illegal transactions was certainly relevant and evidenced to the jury his criminal involvement. Further, the defense developed the impact of defendant's plea on Dennis's situation, thereby affecting his credibility.[6] In any event, since defendant did not object to the testimony, he must demonstrate that its admission was clearly capable of producing an unjust result. R. 2:10-2.
The thrust of the State's case was that defendant made money from drugs and had no substantial income from other sources. Dennis's testimony supported its contention that defendant's properties and money were derived from illegal drug activity. The jury was clearly instructed that the State had to prove "beyond a reasonable doubt that the defendant's racketeering activities enable[d] him to acquire or maintain ... the monies and properties in question." It was never instructed that Dennis's plea or forfeiture was relevant to the amount of defendant's profits from drug activities or his interest in particular property. We cannot conclude that the brother's testimony was so prejudicial that it was clearly capable of producing an unjust result.
*422 Nor did it constitute inadmissible expert testimony. Dennis's testimony relative to the process of manufacturing methamphetamine and the street price of the final product did not constitute "opinions" on which expert testimony was required, but rather related facts and personal experiences. Dennis was not offered as an "expert" and the provisions of Evid.R. 19 control the admissibility of his testimony. That Rule provides that "[a]s a prerequisite for the testimony of a witness there must be evidence that he has personal knowledge of the matter, or experience, training, or education, if such be required. Such evidence may be provided by the testimony of the witness himself." By virtue of his admitted involvement in the sale and manufacture of methamphetamine and the transactions with his brother, Dennis Sparano was properly allowed to testify as to facts related to his involvement in the manufacturing of methamphetamine, the income which the product generated, and his transactions in this context with defendant, to whom he supplied the basic ingredients for methamphetamine. Cf. State v. LaBrutto, 114 N.J. 187, 553 A.2d 335 (1989). See also State v. Odom, 116 N.J. 65, 560 A.2d 1198 (1989).[7]

IV.
Defendant contends that he was entitled to a jury instruction that there was a presumption of non-forfeiture, similar to the charge on the presumption of innocence given at the guilt phase. He reasons that the presumption flows from the fact that the forfeiture proceeding is part of the criminal process to which the presumption applies. He also challenges the instruction which explained that, when an individual uses illegal money for living expenses, that illegal money can be considered to have indirectly maintained an asset which the individual purchased with money which can be traced to legitimate sources. *423 The theory is that without the illegal income, the individual would not have been able to preserve his other legitimate resources to purchase the property. We conclude that the instructions were adequate.
New Jersey's racketeering statute, enacted in 1987, is derived from the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. § 1961-1968. See Cannel, New Jersey Criminal Code Annotated, comment to N.J.S.A. 2C:41-1 (1990). The Act essentially incorporated relevant federal case law with respect to the federal act. Cf. State v. Ramseur, 106 N.J. 123, 203-205, 524 A.2d 188 (1987); see also State v. Passante, 225 N.J. Super. 439, 442, 542 A.2d 952 (Law Div. 1987).
N.J.S.A. 2C:41-1 defines the crimes which can constitute "racketeering activity." They include manufacture, distribution and possession of a controlled dangerous substance under N.J.S.A. 2C:35-5. See N.J.S.A. 2C:41-1a(1)(u). N.J.S.A. 2C:41-1(d) defines what constitutes a "[p]attern of racketeering activity," and N.J.S.A. 2C:41-2 makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest directly or indirectly, any part of the income or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce." There is no contest as to the validity of defendant's plea. He pled guilty to count two charging "racketeering" in violation of N.J.S.A. 2C:41-2c.[8]
In addition to classifying the crime of "racketeering" N.J.S.A. 2C:41-3b provides that persons convicted of racketeering under N.J.S.A. 2C:41-2 shall forfeit "(1) Any interest including *424 money or anything of value which he has acquired or maintained in violation of [chapter 41] and (2) Any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over any enterprise which he has established, acquired, maintained, operated, controlled, conducted, or participated in the conduct of, in violation of" the chapter.
The forfeiture is, thus, part of the sentence imposed on a defendant after he or she has been found or pled guilty. United States v. Horak, 833 F.2d 1235, 1246 (7th Cir.1987); United States v. Ginsburg, 773 F.2d 798, 800-801 (7th Cir.1985) (en banc), cert. denied 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). Hence, defendant is not entitled to a charge on a presumption of non-forfeiture. To the contrary, having pled guilty to "racketeering" there was no longer any such presumption, and issues relating to sentencing (as opposed to guilt) need not be proven beyond a reasonable doubt. See e.g. State v. Stewart, 96 N.J. 596, 606, 477 A.2d 300 (1984) (Graves Act). See also McMillan v. Pennsylvania, 477 U.S. 79, 91-92, 106 S.Ct. 2411, 2418-19, 91 L.Ed.2d 67, 80 (1986) (reasonable doubt standard does not apply to sentencing).
The court instructed the jury that the State was required to prove "beyond a reasonable doubt" that defendant had "an ownership interest" in the properties which the State argued should be forfeited and must also prove "beyond a reasonable doubt that Mr. Sparano's racketeering activities were a cause of the acquisition or maintenance of these interests, or some portion of them." It thus instructed the jury, in accordance with N.J.S.A. 2C:41-3b, requiring forfeiture of interests "acquired or maintained" in violation of chapter 41.[9] In adding the *425 "beyond a reasonable doubt" requirement, the judge properly followed federal RICO case law, see e.g., United States v. Horak, supra, 833 F.2d at 1243-1244; United States v. McKeithen, 822 F.2d 310, 312 (2nd Cir.1987), even though such was not necessarily required by the statute or our case law and although we do not hold that it is constitutionally required in this sentencing context. See McMillan v. Pennsylvania, supra; United States v. Sandini, 816 F.2d 869 (3rd Cir.1987); compare Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281, 292 (1977); In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970). See also N.J.S.A. 2C:1-13.
Even though the judge advised the jury that defendant, by his guilty plea to count two, "has admitted to the requisite pattern of racketeering activity called for in the statute," State v. Ingenito, 87 N.J. 204, 432 A.2d 912 (1981), on which he relies, is not relevant in this context. Ingenito concerned the State's obligation to prove defendant guilty of possession, notwithstanding a prior verdict on another offense involving the same element of the crime.
The statute does not mean that a defendant who inherited a substantial estate or legitimately made substantial income before his criminal wrongdoing must forfeit all his legitimate assets. The State must prove that "but for" his "racketeering" defendant would not have acquired the asset or property which the State seeks to forfeit. Cf. N.J.S.A. 2C:2-3 (causation); State v. Martin, 119 N.J. 2, 573 A.2d 1359 (1990) (relating to elements of offense). Hence, a defendant may be required to forfeit some but not all of his property, or a percentage of a given asset, depending on the amount of assets he has and the percentage of net worth that is legitimate as compared with that which is not. The jury can determine that only a portion of the defendant's interest in property resulted from the illegal gain. See United States v. McKeithen, supra, 822 F.2d at 313-315 (forfeiture of 43%, not entire interest, in *426 real property warranted). The trial judge adequately conveyed this concept to the jury.
Defendant argues that the State had to prove only that the illegal funds had to be a source of the property acquired or maintained because of the judge's reference to both the "direct use" and "indirect use" of the drug proceeds. Defendant, in essence, contends that under the judge's instructions, all his property is presumed to be forfeited, because, even if purchased with legitimate funds, the purchases would be considered to be subsidized by the use of illegal monies for other purposes. The argument, however, is really addressed to legislative policy. The statute expressly talks of income derived "directly or indirectly" from the racketeering enterprise. See N.J.S.A. 2C:41-2a.
Since RICO forfeiture is a sanction against the individual defendant rather than the property itself, "it follows the defendant as part of the penalty and thus it does not require that the government trace it, even though the forfeiture is not due until after conviction." United States v. Conner, 752 F.2d [566, 576 (11th Cir.1985), cert. denied sub nom. Taylor v. U.S., 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985)]. [United States v. Ginsburg, supra, 773 F.2d at 801].
In Ginsburg, the Seventh Circuit, sitting en banc, explained the rationale in response to a similar argument:
What the defendant's argument overlooks is the fact that a racketeer who dissipates the profits or proceeds of his racketeering activity on wine, women, and song has profited from organized crime to the same extent as if he had put the money in his bank account. Every dollar that the racketeer derives from illicit activities and then spends on such items as food, entertainment, college tuition, and charity, is a dollar that should not have been available for him to spend for those purposes. In order to truly separate the racketeer from his dishonest gains, therefore, the statute requires him to forfeit to the United States the total amount of the proceeds of his racketeering activity, regardless of whether the specific dollars received from that activity are still in his possession. To require less would seriously undermine the intended deterrent effect of RICO forfeiture; a racketeer would have no incentive to discontinue his racketeering activity if he could freely use the proceeds of that activity to enrich his life up until the moment of his eventual conviction, at which time he would only be required to forfeit whatever was left over. In sum, the legislative history of RICO does not support the defendant's interpretation of section 1963(a)(1) as requiring the government to trace the proceeds of racketeering activity in order to prove that they are still in existence at the time of conviction. [773 F.2d at 802].
*427 We thus hold that there need not be a "direct" connection between racketeering profits and the acquired property sought to be forfeited, so long as the State proves that the property was acquired by funds equivalent to the fruits of the criminal activity. As the United States Court of Appeals for the 11th Circuit has said in United States v. Navarro-Ordas, 770 F.2d 959, 970 (11th Cir.1985), cert. denied sub nom. Rodriguez v. U.S., 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986), regarding the federal RICO statute:
To limit the forfeiture to profits actually traced to assets [one defendant] held at the time the forfeiture order issued would simply provide an incentive for racketeers to engage in complicated financial transactions to hide their spoils. The legislative history leaves no doubt that, in the view of Congress, the economic power organized crime enjoys is derived from its huge illegal profits. To carry out Congress' intent, a court must order forfeiture of the amount of the profits and place the burden of satisfying the order on the convicted defendant, regardless of what he may actually have done with his profits. To do otherwise "would mean that `[w]hole areas of organized criminal activity would be placed beyond' the reach of the statute." Russello [v. U.S.] 464 U.S. [16] at 24, 104 S.Ct. [296] at 301 [78 L.Ed.2d 17 (1983)] (quoting United States v. Turkette, 452 U.S. 576, 589, 101 S.Ct. 2524, 2531, 69 L.Ed.2d 246 (1981)).
Thus, a defendant convicted of "racketeering" may be required to forfeit property equal in value to the proceeds of his illegal activity.
The charge in this case taken as a whole was satisfactory. Considering defendant's admissions, coupled with his brother's testimony concerning defendant's purchases and sales and the amount of saleable methamphetamine derived from this substance, and the testimony of Investigator Higham, there was more than adequate evidence that defendant earned far more from his illegal drug activity than the value of the residence and condominium purchased for $86,500 and $88,000, respectively, and the currency forfeited.
Affirmed.
NOTES
[1] Defendant also agreed to "waive any appeal rights as a result of the plea offer." The essential issues before us relate to subsequent proceedings and are not impacted by the "waiver." See State v. Robinson, 224 N.J. Super. 495, 498, 540 A.2d 1313 (App.Div. 1988).
[2] The Kristin Way property was owned jointly with his wife, Donna, and the Silver Court condominium unit was entirely in her name. The jury decided that defendant had an interest in these assets and that 100% of his interest should be forfeited. While not raised or briefed before us, and despite the Attorney General's statement of the issue in his summation, we note that we do not necessarily read the charge or verdict sheet to address the percentage of interest defendant had in the property, as opposed to the percentage of his interest which must be forfeited. While there was proof of Donna Sparano's work efforts and business interests, there is no satisfactory proof that the condominium was purchased from proceeds derived completely independent of defendant. N.J.S.A. 2C:41-3d allows the Attorney General to seize forfeited assets "subject to the rights of innocent persons such as any prior lienholders." The Attorney General may sell such properties, "making due provision for the rights of innocent persons." N.J.S.A. 2C:41-3e. These provisions would allow the State to make some accommodation for the legitimate interest, if any, of Donna Sparano, the wife, in the properties. We need not discuss the rights of persons with interest in property the State seeks to forfeit to notice, and opportunity to be heard, in other circumstances.
[3] Only eleven of the thirteen other counts are dismissed in the judgment.
[4] Dennis denied that his credibility was affected because defendant had agreed to testify against him and their other co-defendants in connection with his guilty plea. Dennis pled guilty after defendant and testified in these proceedings that in connection with his own guilty plea, he had forfeited over $1,000,000 worth of property to the State.
[5] New counsel was not then prepared to proceed with the complex case scheduled to commence the next Monday four days later.
[6] Defense counsel cross-examined Dennis about his plea and forfeiture of "[s]lightly over a million dollars," contending that he threatened "to get even" with defendant for agreeing to testify against him. In fact, defendant called his mother to develop the threat and stressed Dennis's lack of credibility in his summation.
[7] This is not to suggest that Dennis would not have qualified as an expert in illegal drug trafficking. In his summation defense counsel stated, "I guess [Dennis] could even be qualified as an expert in narcotics."
[8] No constitutional issue is raised under the Commerce Clause or otherwise, see State v. Passante, supra, or as to the sufficiency of the factual basis of defendant's plea.
[9] The remedy in N.J.S.A. 2C:41-3b is in addition to that authorized by way of civil remedy in N.J.S.A. 2C:41-4 and all other remedies. See N.J.S.A. 2C:41-6.1. See also State v. Darby, 246 N.J. Super. 432, 587 A.2d 1309 (App.Div. 1991). The properties which the State seeks to forfeit in a criminal proceeding must be identified in the indictment, as was done here. N.J.S.A. 2C:41-3f.