**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2214-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANGEL M. ALICEA,

     Defendant-Appellant.

_____

Submitted September 20, 2018 – Decided June 19, 2019

Before Judges Fuentes and Accurso.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 07-06-2114.

Joseph E. Krakora, Public Defender, attorney for appellant (Kisha M. Hebbon, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Linda A. Shashoua, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Angel Alicea appeals from the denial of his post-conviction relief (PCR) petition. The PCR judge denied defendant's petition without conducting an evidentiary hearing. After reviewing the record before us, we are satisfied defendant presented sufficient competent evidence to establish a prima facie case of ineffective assistance of trial counsel. The certifications from two individuals who have personal knowledge of the incident that led to defendant's arrest create a sufficient factual basis to warrant an evidentiary hearing under Rule 3:22-10. The sworn statements of these two individuals create a rational factual basis from which to infer: (1) defendant's trial counsel was ineffective in his trial preparation; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. At this evidentiary hearing, defendant is entitled to have trial counsel explain why he did not assign an investigator to interview the individuals the State listed as eyewitnesses to the shooting. Trial counsel must also describe what factors led defendant to abandon his claim of innocence at the conclusion of the State's presentation of its case in chief, and accept the State's plea offer.

I

A Camden County grand jury indicted defendant Angel Alicea and his brother, codefendant Joey Alicea, with one count of murder, N.J.S.A. 2C:11-

3(a)(1) and (2); one count of first degree attempted murder, N.J.S.A. 2C:5-1, N.J.S.A. 2C:11-3(a)(1); four counts of second degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); one count of first degree conspiracy to commit murder and/or aggravated assault, N.J.S.A. 2C:5-2, N.J.S.A. 2C:11-3(a)(1) and (2), and/or N.J.S.A. 2C:12-1(b)(1); one count of second degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); one count of third degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b)[1]; and second degree possession of a firearm by a person convicted of one of the offenses listed in N.J.S.A. 2C:39-7(a).

The trial began on June 4, 2009. The State rested its case in chief on June 16, 2009. After the trial judge denied defendant's motion for a judgment of acquittal pursuant to Rule 3:18-1, defendant entered into a negotiated agreement with the State through which he pled guilty to first degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), as a lesser included offense of murder. The State agreed to dismiss the remaining charges in the indictment and recommended that the court sentence defendant to a term of twenty-one years, subject to an eighty-five percent period of parole ineligibility and five years of

---

[1] The charges in this indictment arose from an incident that occurred on June 4, 2006. Effective January 13, 2008, the Legislature amended N.J.S.A. 2C:39-5(b) to make unlawful possession of a handgun a second degree offense.

A-2214-16T1

parole supervision, as mandated by the No Early Release Act, N.J.S.A. 2C:43-7.2. The court accepted the plea agreement and sentenced defendant accordingly on July 2, 2009.

Defendant appealed the sentence imposed by the trial court through the summary process available under Rule 2:9-11. After hearing oral argument from counsel, we affirmed the sentence imposed by the court. State v. Angel M. Alicea, No. A-5534-09 (App. Div. December 15, 2010). On June 12, 2014, less than a month before the five-year deadline codified in Rule 3:22-12(a)(1) expired, defendant filed a pro se PCR petition alleging ineffective assistance of trial counsel. Pursuant to Rule 3:22-6(a), defendant also submitted an affidavit of indigency to support his request for representation by the Office of the Public Defender (OPD). On October 2, 2014, the OPD assigned counsel to represent defendant in the prosecution of this PCR petition.

The judge[2] assigned to adjudicate defendant's PCR petition entered an order setting the time for the submission of briefs. In an order entered on February 10, 2015, the judge dismissed defendant's petition without prejudice based on PCR counsel's failure to submit his brief within the timeframe established by the court. The judge thereafter accepted PCR counsel's

---

[2] The PCR judge was not the same judge who presided over defendant's trial.

4                                                                          A-2214-16T1

explanation for his tardiness and reinstated defendant's petition. In the brief he subsequently submitted, PCR counsel argued defendant's trial counsel provided ineffective assistance by failing to interview two individuals known to have personal knowledge of facts related to the shooting that directly undermined the State's theory of culpability against defendant. In support of this claim, PCR counsel included certifications from these two individuals in which they described the nature of the exculpatory evidence and expressly affirmed their willingness to testify in an evidentiary hearing on matters directly related to defense counsel's failure to investigate the case.

Specifically, in her sworn certification, Nicole Moody stated she was an eyewitness to the shooting and was interviewed by investigators from the Camden County Prosecutor's Office (CCPO) on the date of the shooting. Defendant's trial counsel was aware that Moody had personal knowledge of the shooting because she was listed as a potential witness at trial and her name was disclosed to all potential jurors during the jury-selection process.

In her certification in support of defendant's PCR petition, Moody averred as follows:

A-2214-16T1

## MOODY CERTIFICATION

. . . .

2. In the early morning of June 4, 2006, I was in Camden, New Jersey, on or around the intersection of Mount Ephraim Avenue and Thurman Street.

3. I [sic] just outside of the Crown Fried Chicken restaurant near the intersection of Mount Ephraim Avenue and Thurman Street when I heard guns [sic] shots.

4. I saw the person who was firing the shots. He was a black male. He was wearing a white tee shirt and blue pants. He had low cut hair. He was average height – not tall and not short. He had a solid build – not skinny and not fat.

5. I provided a description of the shooter to the Camden Police on the same day as the shooting. The description in paragraph three was the description I provided to the authorities.

6. I know Angel Alicea. I knew Angel Alicea prior to June 4, 2006. I am certain that Angel Alicea was not the person I saw firing a gun on June 4, 2006.

7. After I spoke to the police on June 4, 2006 no one ever contacted me again about the shooting.

8. No one representing Angel Alicea ever contacted me about the shooting on June 4, 2006.

9. I would have been willing to speak to an investigator or defense attorney representing Angel Alicea if I had been contacted.

6

10. I would have been willing to appear at the trial of Angel Alicea and testify to what I told the Camden police and set forth above if I had been called as a witness.

11. I am still willing to appear and testify as a witness concerning the shooting on June 4, 2006 if called to do so.

The shooting occurred on June 4, 2006 at four o'clock in the morning. The record shows that an investigator from the CCPO questioned Moody about the shooting at 11:22 a.m. that same day. Moody told the investigator that she saw the body of the eighteen-year-old homicide victim and addressed the shooters directly as follows:

> MOODY: . . . like yo, why you, like this is a baby layin' there, why would you do somethin', you know what I mean, like y'all boys gotta leave, put them guns down, you know what I mean, ya'll killin' innocent people.
>
> INVESTIGATOR: Did he say anything to you?
>
> MOODY: No, he didn't say nothin' to me.
>
> INVESTIGATOR: Describe the male.
>
> MOODY: I guess, he was a black male, he had on a white tee shirt and blue pants. That's all I, I really, you know what I mean, describe like.

At trial, the State rested its case in chief without calling Moody as a witness. As the following excerpt from his opening statement illustrates, the

7

unreliability of the State's witnesses' testimony was a central part of defense counsel's trial strategy:

> Every single one of the witnesses that are going to be called has given several statements, has lied to the police under oath and then recanted and told another story, or they're sitting in jail waiting for a sentence, and they've been sitting in jail for two years.
>
> You'll see one of the witnesses, Jamal Gibbs. He's been sitting in jail for two years. Claims that he was having conversations with my client, who was waiting to be tried for this. . . . And in walks Jamal Gibbs two years later and comes up with a story, having access to all this man's paperwork. And Jamal Gibbs goes to sentencing next week on a drug case, and Jamal Gibbs is in there for attempted murder that hasn't been brought to trial yet.

The State called Jamal Gibbs as an alleged eyewitness to the shooting. However, in the presence of the jury, the prosecutor began his direct examination by asking Gibbs if defendant and his brother "were . . . involved in a drug set or gang?" This prompted immediate objections from both defense counsel. After initially sustaining defendants' objections, the trial judge decided to allow the prosecutor to pursue this line of inquiry. The judge ruled the prosecutor was merely seeking Gibbs's "knowledge as to what he believed." The judge thus instructed the jury that Gibbs's testimony was not intended to establish the truth of what actually happened.

Based on this ruling, Gibbs testified about an alleged dispute that arose when "some other party from another part of town entered [Joey Alicea's] house . . . and supposedly did a home invasion and stole some things for him . . . [.]" According to Gibbs, the alleged theft involved "some drugs." When the prosecutor asked him to elaborate, Gibbs stated: "Supposedly, they entered the crib [home], stole some drugs and beat his baby mom up, whatever." This again prompted immediate objections from defense counsel. After a sidebar discussion, the trial judge decided to conduct an impromptu N.J.R.E. 104(a) hearing outside the presence of the jury to determine the admissibility of testimony from Gibbs related to defendants' "motive" for the shooting under N.J.R.E. 404(b).

For the first time at trial, the prosecutor argued that Gibbs's testimony met "all the prongs of the [State v. Cofield, 127 N.J. 328, 338 (1992)] test. It's certainly relevant to a material issue in dispute. This is, in fact, the motive for the entire incident." Defense counsel noted the State did not provide any prior notice of its intent to introduce N.J.R.E. 404(b) evidence. After considering Gibbs's testimony developed at the N.J.R.E. 104(a) hearing, the judge decided to admit this evidence. The trial judge provided the following explanation for his ruling:

In this matter, the State wishes to put forth from this witness . . . that drugs were . . . allegedly stolen from his house and someone was assaulted.  And they're alleging that this is - - the motive for the subsequent actions by the defendants.

As the trial proceeded before the jury, the prosecutor eventually asked Gibbs to describe what he saw with respect to the shooting.  According to Gibbs, although he did not hear what defendants were saying to each other, he saw defendant, Angel Alicea, "ready to get rowdy. . . [.]"  At this point, Gibbs testified he heard Angel Alicea tell his brother Joey "like, look, man, they right there."  Gibbs provided the following account of the shooting:

> A. [Angel Alicea] put the hoodie on.  He had his ponytails, whatever.  He put his ponytails in the hoodie, you know.  He put his ponytails in the hoodie and put the hoodie over his head like and was - -
>
> Q. Could you still . . . see the ponytails in the sides of the hood?
>
> A. Well, if you was in front of him, you know what I'm saying, you could see it like tucked in whatever.
>
> Q. Okay.  And where did - - where did Angel go then?
>
> A. He stopped in the street towards - -
>
> Q. And what street is that?  Can you point to where he stepped?[3]

---

[3]  The record shows the State marked as S-1 a map or photograph of the area that depicts the location of the Crown Fried Chicken restaurant.

A-2214-16T1

. . . .

A. He moved into the middle of . . . Mt. Ephraim Avenue to right across from the Crown Fried like towards where Phil and Lorraine and all the other guys were standing at in front of the Chinese store and in between the stoop and the check cashing place.

Q. Did he . . . how far across the street did he go? Did he go more or less than halfway?

A. He went more than halfway. He walked - - actually, he walked like right up on him.

Q. And what did he do at that time?

A. He started shooting.

Q. And when you say he started shooting, specifically did you see the guns?

A. Yeah. He had two of them.

. . . .

Q. Okay. And what kind of guns did he have?

A. Revolvers.

Q. Okay. And did he fire both guns?

A. Yes.

In support of this PCR petition, defendant submitted the following certification from Frederick Purnell, who averred he was incarcerated and

11

shared living quarters with defendant and Gibbs at the Camden County Correctional Facility.

PURNELL CERTIFICATION

. . . .

2. In the year 2008 or 2009 I was incarcerated in the Camden County jail. Angel Alicea was my cellmate during part of the time I was in the Camden county jail.

3. Jamal Gibbs was also in the Camden jail with myself and Angel Alicea during this time.

4. For a period of time Jamal Gibbs was being housed on the same tier as Angel Alicea and I. Gibbs' cell was very close to the cell I shared with Angel Alicea.

5. I have personal knowledge that Jamal Gibbs was cooperating with the police by providing information about other inmates.

6. I have personal knowledge that Jamal Gibbs was providing information to the police about Angel Alicea.

7. I have personal knowledge that Jamal Gibbs was taking information he got from reading the newspaper and telling it to the police as information for which he claimed to have direct knowledge.

8. No one representing Angel Alicea ever contacted me about the information that Jamal Gibbs was telling the police about Angel Alicea. [Other words not legible.]

9. I would have been willing to speak to an investigator or defense attorney representing Angel Alicea if I had been contacted.

> 10. I would have been willing to appear at the trial of Angel Alicea and testify about the information I provided above about Jamal Gibbs if I had been called as a witness.

Defendant's petition came for oral argument before the PCR judge on September 16, 2016. After articulating the two-prong standard established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and subsequently adopted by our Supreme Court in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987), the PCR judge concluded that defendant's trial counsel "was aware of [Moody's] statement and had the ability to call her as a witness." According to the PCR judge, because defendants' counsel "had not begun their case-in-chief . . . [defendant] has failed to establish that their trial counsel's performance was deficient." The PCR judge acknowledged that defendant based his claim of ineffective assistance on defense counsel's failure "to investigate, and ultimately call to testify, Nicole Moody or Frederick Purnell." The judge concluded, however, that defendant's claim of ineffective assistance based on counsel's failure to investigate was "purely speculative." Finally, the judge held that defendant's decision to plead guilty pursuant to a negotiated agreement with the State "renders the argument moot."

13

II

Against this backdrop, defendant now appeals raising the following arguments:

POINT I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO DETERMINE THE MERITS OF HIS CONTENTION THAT HE WAS DENIED THE RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

A. The Prevailing Legal Principles Regarding Claims Of Ineffective Assistance Of Counsel, Evidentiary Hearings And Petitions For Post-Conviction Relief.

B. Trial Counsel Rendered Ineffective Legal Representation By Virtue Of His Failure To Investigate Two Potential Witnesses And To Call Them At Trial.

C. Trial Counsel Rendered Ineffective Legal Representation By Virtue Of His Failure To Contest The Identification Made By Witness Lorraine Fitzsimmons.

D. Defendant Is Entitled To A Remand To The Trial Court To Afford Him An Evidentiary Hearing To Determine The Merits of His Contention That He Was Denied The Effective Assistance Of Trial Counsel.

14

Because the PCR judge denied defendant's petition as a matter of law, we review his decision de novo. State v. Harris, 181 N.J. 391, 415 (2004). The de novo standard of review also applies to mixed questions of fact and law. Id. at 419-20. Where, as here, an evidentiary hearing was not held, it is within our authority "to conduct a de novo review of both the factual findings and legal conclusions of the PCR court." Id. at 421.

To prevail on a claim of ineffective assistance of counsel under the two-prong standard in Strickland, defendant must first demonstrate that his trial counsel's performance was deficient. Strickland, 466 U.S. at 687. Second, he must show there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Our Supreme Court has also held that a PCR court should exercise its discretionary authority to conduct an evidentiary hearing under Rule 3:22-10 when the material facts underpinning defendant's claim of ineffective assistance of counsel lie outside the trial record and require the attorney's testimony. State v. Preciose, 129 N.J. 451, 462 (1992).

Because most claims of ineffective assistance of counsel ordinarily involve legal issues predicated on facts that are not available on direct appeal, a defendant "must develop a record at a hearing at which counsel can explain the

15

reasons for his conduct and inaction and at which the trial judge can rule upon the claims including the issue of prejudice." State v. Sparano, 249 N.J. Super. 411, 419 (App. Div. 1991) (citations omitted).

> Thus, trial courts ordinarily should grant evidentiary hearings to resolve ineffective-assistance-of-counsel claims if a defendant has presented a prima facie claim in support of post-conviction relief. As in a summary judgment motion, courts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim.
>
> [Preciose, 129 N.J. at 462-63.]

Here, defendant argues trial counsel's unexplained failure to investigate and interview Moody and Purnell is sufficient to satisfy the first prong in Strickland. We agree. Moody was immediately identified as an eyewitness to the shooting by investigators from the CCPO and was interviewed that same day. As part of its discovery obligation, the CCPO provided trial counsel a transcript of her verbatim account of the shooting in which she described her interactions with the shooter while the eighteen-year-old homicide victim lay on the ground bleeding from her wounds. Moody's statement to the CCPO investigators is materially irreconcilable with the certification she submitted in support of defendant's PCR petition. Viewing the facts in the light most favorable to defendant, Moody's testimony at trial would have significantly

16

undermined the State's case. Defendant is entitled to explore her account of the shooting at an evidentiary hearing. Defendant is also entitled to ask trial counsel to explain, under oath, why he failed to assign an investigator to interview Moody. The State's decision to rest its case in chief without calling Moody as a witness enhances the credibility of her exculpatory account of the shooting.

We reach the same conclusion with respect to Purnell. The PCR court must determine whether defendant's trial counsel was aware of Purnell's willingness to testify and impugn Gibbs's credibility in the manner he described in his certification. If counsel was aware, the court must then determine the reasonableness of any explanation counsel may offer in support his decision not to assign an investigator to interview Purnell.

When there is a claim of ineffective assistance of counsel in which a defendant pled guilty, the issue the PCR court must determine is whether there is a reasonable probability that, but for trial counsel's failure to interview these witnesses, defendant would not have pled guilty and would have insisted on going forward to present a defense at trial. State v. Nunez-Valdez, 200 N.J. 129, 138-39 (2009); see also State v. Smullen, 437 N.J. Super. 102, 110 (App. Div. 2014). The PCR judge must make this determination based on factual findings

predicated on testimonial evidence presented at an evidentiary hearing as provided in Rule 3:22-10.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2214-16T1