**PHILADELPHIA RESERVE SUPPLY COMPANY, Plaintiff,**

v.

**NOWALK & ASSOCIATES, INC., et al., Defendants.**

Civ. A. No. 91–0449.

United States District Court, E.D. Pennsylvania.

Sept. 27, 1994.

Steven J. Fram, Philadelphia, PA, for plaintiff.

Stephen J. Mathes, Philadelphia, PA, Joseph H. Kenney, Ralph R. Smith, 3rd, Cherry Hill, NJ, for defendants.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Philadelphia Reserve Supply Company ("PRSCO") brought this action against defendants Nowalk & Associates, Inc., Joseph W. Johnson, Richard G. Nowalk, Michael A. Hudy, John Tedesco, Barry Weshnak, Jeffrey Walsh, William Greenberg, Peter H. Wegener, Joseph Tomasek, and Bathgate, Wegener, Wouters and Neumann, P.C. claiming that they engaged in a scheme to defraud plaintiff which violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 ("federal RICO"), violated the New Jersey Racketeer Influenced and Corrupt Organizations statute, N.J.Rev.Stat. §§ 2C:41–1 to –6.2 ("New Jersey RICO"), and gave rise to various other state law claims. In a memorandum and order dated August 25, 1992 ("Memorandum"), I dismissed the claims based on federal RICO and New Jersey RICO. Document No. 62. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1332

as the parties are of diverse citizenship and the amount in controversy exceeds $50,000 exclusive of interest and costs.

Currently before me is the motion of plaintiff for reconsideration and reinstatement of its claims under New Jersey RICO. Document No. 94. For the following reasons, I will reconsider my decision to dismiss the claims based on New Jersey RICO, and I will grant the motion for reinstatement as to Counts Six through Ten of the second amended complaint (Document No. 29).[1]

## I. PROCEDURAL HISTORY

The procedural history up until the date of the Memorandum was detailed therein and will not be repeated here. *See* Memorandum, at 2–3. Since that time, the defendants have answered the third amended complaint, and the parties have proceeded with discovery. U.S. Magistrate Judge M. Faith Angell has overseen discovery and other pretrial matters since August of 1993. Currently pending before Judge Angell are motions of the defendants for summary judgment.[2]

## II. FACTUAL BACKGROUND[3]

The factual background of this case was detailed in the previous Memorandum and so will be summarized only briefly here. *See* Memorandum, at 3–7. Plaintiff is a building materials buying cooperative comprised of members who are building material resellers. The defendants are former directors, accountants and lawyers for Johnson Home Centers of New Jersey, Inc. ("JHC"). Plaintiff states that defendants engaged in a "bust-out"

scheme to defraud plaintiff and other creditors in order to save JHC from insolvency and to salvage the defendants' investments.[4] JHC was allowed to become a purchasing member of PRSCO after the defendants misrepresented JHC's financial status. For several months after JHC became a member, JHC bought materials through PRSCO and promptly paid the bills for those materials in order to further convince PRSCO that JHC was financially sound. Then the Board of Directors of JHC ordered the purchase of as much inventory as possible from PRSCO and other suppliers, with no intention of paying for it. These actions were taken in order to force JHC's creditors, including PRSCO, to settle their claims against JHC for a fraction of their true value in the face of JHC's potential bankruptcy.

Plaintiff also contends that the defendants took a number of actions, including lying at depositions and intimidating PRSCO officers, to cover up their involvement in the scheme.

## III. DISCUSSION

### A. *Reconsideration*

■■■ A motion to dismiss which is only partially granted does not constitute a final judgment, unless expressly entered as such. Fed.R.Civ.P. 54(b). As a non-final judgment, it is "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." *Id.* In addition, "so long as [a] district court has jurisdiction over [a] case, [the district court] possesses inherent power over interlocutory orders, and can reconsider

1. Plaintiff has since dismissed its claims against defendants Johnson and Walsh. Document Nos. 38, 128. Therefore, I will not reconsider my previous decision as it applies to them. Plaintiff has also told the court that it has settled its claims against defendant Weshnak. *See* Document No. 130. But since a dismissal of the claims against defendant Weshnak has not been filed by plaintiff, I will treat defendant Weshnak as still a party to this case.

Plaintiff has not asked me to reconsider my decision to partially deny its request for leave to amend the second amended complaint; therefore, I will not reconsider that decision at this time.

2. The decision on the motion of defendants Tomasek, Wegener, and Bathgate, Wegener, Wout-

ers and Neumann, P.C. for summary judgment has been stayed by Judge Angell pending the decision by the Supreme Court of New Jersey in *Petrillo v. Bachenberg*, 263 N.J.Super. 472, 623 A.2d 272 (App.Div.), *certification granted*, 134 N.J. 566, 636 A.2d 523 (1993). An appeal of that stay is currently pending before this court.

3. The following facts are based on plaintiff's well-pleaded factual allegations, construed in the light most favorable to plaintiff, as required when considering a motion to dismiss. *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).

4. For the definition of a "bust-out" scheme, *see* Memorandum, at 4–5 n. 1.

them when it is consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir.1973); *see also Rottmund v. Continental Assur. Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992).[5]

■ I rested the dismissal of the New Jersey RICO claims on a legal finding that the definition of a "pattern of racketeering activity" under New Jersey RICO is the same as the definition of a pattern of racketeering activity under federal RICO. Under federal RICO, there must be continuity for a pattern of racketeering activity to exist. Continuity means that the alleged racketeering scheme must be either open-ended, that is threatening continuing racketeering activity, or close-ended but lasting a substantial period of time. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 241, 109 S.Ct. 2893, 2901–02, 106 L.Ed.2d 195 (1989). I then found that plaintiff had sufficiently alleged, at most, a close-ended scheme lasting only seven months, which did not constitute a long enough period of time so as to satisfy the continuity requirement.

At the time of my decision, neither the Supreme Court of New Jersey nor any intermediate appellate courts in New Jersey had ruled on whether, under New Jersey RICO, continuity was required for a "pattern" to exist. The motion of plaintiff for reconsideration is based on a recent decision by the Superior Court of New Jersey, Appellate Division. *State v. Ball*, 268 N.J.Super. 72, 632 A.2d 1222 (App.Div.1993), *certification granted sub nom. State v. Bassi*, 135 N.J.

304, 639 A.2d 304, *certification granted sub nom. State v. Harvan*, 135 N.J. 304, 639 A.2d 304, *certification granted sub nom. State v. Hurtuk*, 135 N.J. 305, 639 A.2d 304 (1994). In *Ball*, the appellate court found that the definition of pattern under New Jersey RICO, unlike under federal RICO, does not include a continuity element. *Id.* 632 A.2d at 1257–59.

■ When a federal court is applying state law without the benefit of a decision by the highest court of a state, lower state court decisions are not controlling; however, an intermediate appellate state court decision "is a datum for ascertaining state law which is not to be disregarded by a federal court." *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). Given the significant addition that the *Ball* case makes to the sparse legal landscape on the issue of whether a New Jersey RICO pattern requires continuity, I will reconsider my decision to dismiss the New Jersey RICO claims.[6]

**B. *New Jersey RICO's "Pattern of Racketeering Activity" and Continuity***

**1. *Weight of an Intermediate State Court Decision***

■ When the highest court of a state has not ruled on an issue of state law, a federal court is required to predict how that court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–

---

5. Defendants have implied that this motion is untimely because of the current stage of the litigation. In addition, U.S.D.C.E.D. Pa. Local R. 20(g) ("Local Rule 20(g)") requires that "[m]otions for reconsideration ... shall be served within ten (10) days after the entry of the judgment, order, or decree concerned." Plaintiff has not met the requirements of this local rule. Violations of local rules, however, may be excused by the court in its discretion. *See Schering Corp. v. Vitarine Pharmaceuticals, Inc.*, 124 F.R.D. 580, 593 n. 18 (D.N.J.), *rev'd on other grounds*, 889 F.2d 490 (3d Cir.1989).

Plaintiff has plausibly asserted that it did not become aware of the appellate court's decision in *State v. Ball*, upon which the instant motion for reconsideration and reinstatement rests, until December 1993 because the decision was not released for publication until November 4, 1993. Since the instant motion was filed shortly there-

after, on December 27, 1993, I do not believe that plaintiff's motion is untimely even given the current stage of the litigation. And since the *Ball* decision was released for publication more than ten days after my Memorandum was issued, I excuse plaintiff's violation of Local Rule 20(g).

6. The parties have not suggested that I stay my decision on this motion pending the Supreme Court of New Jersey's decision in this matter. Given the advanced stage of the instant litigation and the fact that past history indicates that the Supreme Court may not issue a final decision for up to a year, I believe it is best to decide this motion now. The risk that I will incorrectly gauge what the Supreme Court will finally determine is outweighed by the cost of stalling this litigation for potentially another year.

83, 18 L.Ed.2d 886 (1967). The federal court may consider a range of information, including "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). While the decisions of intermediate courts are but one datum to consider, they are " 'indicia of how the state's highest court might decide' the issue." *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3d Cir.1985) (quoting *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981)). I can only disregard such decisions if I am "convinced by other persuasive data that the highest court of the state would decided otherwise." *West, supra*, 311 U.S. at 237, 61 S.Ct. at 183.[7]

### 2. *The State v. Ball Decision*

The court in *Ball* found that New Jersey RICO, unlike its federal counterpart, does not require "continuity" in order for a "pattern of racketeering activity" to exist. 632 A.2d at 1257–59. This holding is contrary to the general rule that it is "appropriate to seek guidance from" federal decisions interpreting federal RICO because New Jersey RICO borrows the structure, purpose and remedies of federal RICO. *Ball, supra*, 632 A.2d at 1235; *see also State v. Ramseur*, 106 N.J. 123, 524 A.2d 188, 228 (1987) (noting that when the New Jersey legislature adopts complex statutes modelled after existing statutes in other jurisdictions, it also generally adopts the case law interpreting those statutes). In several other areas, New Jersey courts have followed federal case law. *See e.g., State v. New Jersey Trade Waste Ass'n*, 96 N.J. 8, 472 A.2d 1050, 1056 (1984) (anti-

trust); *Peper v. Princeton Univ. Bd. of Trustees*, 77 N.J. 55, 389 A.2d 465, 478 (1978) (employment discrimination). In the antitrust area, following federal case law is required by statute. *See* N.J.Rev.Stat. § 56:9–18; *New Jersey Trade Waste Ass'n*, 472 A.2d at 1056. But in the employment discrimination area, while Supreme Court of New Jersey made it clear that it was not bound to accept federal case law, it chose to do so because "where these [federal] standards are useful and fair, it is in the best interests of everyone concerned to have some uniformity in the law." *Peper*, 389 A.2d at 478. Therefore, for the holding in *Ball* to be an accurate prediction of what the Supreme Court of New Jersey would decide on this issue, there must be a reasoned basis for departing from federal case law.

The court in *Ball* based its holding on the New Jersey RICO statute's language, its legislative history, the state of federal RICO case law at the time the New Jersey RICO statute became law, and other cases interpreting similar state RICO statutes. I will review each of these grounds.

### a. *Statutory Language*

The court in *Ball* found that the New Jersey statute provides a complete definition of a "pattern of racketeering activity," unlike its federal counterpart. 632 A.2d at 1259. Federal RICO provides:

> "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity

18 U.S.C. § 1961(5). The incompleteness of the federal definition has been long recognized, and it led to two judicial clarifications

---

7. The *Ball* court's holding on continuity is technically dictum, since the court held that there was sufficient evidence to establish continuity. 632 A.2d at 1257. The appellate court appears, however, to rest its decision primarily on its holding that continuity was not required and not on a review of the evidence before the trial court, which evidence the appellate court does not even summarize. *See* 632 A.2d at 1257–59. Under any conditions, I am not bound by the appellate

court decision, so it is the reasoning of the court's decision that is most important, not whether it can be characterized as dictum. *See McKenna, supra*, 622 F.2d at 662 (holding that since state appellate court decisions are not binding on federal courts, the fact that a holding is dictum is less important than the strength of reasoning supporting the holding); *National Surety Corp. v. Midland Bank*, 551 F.2d 21, 30–31 (3d Cir.1977) (same).

of the meaning of "pattern." First, the Supreme Court of the United States held that the acts that make up the racketeering activity must be related. *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). Second, The Supreme Court held that for a pattern to exist there must be "continuity," since Congress' clear legislative intent was to attack continued criminal activity. *Northwestern Bell, supra,* 492 U.S. at 239, 109 S.Ct. at 2900–01.

The *Ball* court found that these judicial clarifications were unnecessary with regard to New Jersey RICO. New Jersey RICO provides:

> "Pattern of racketeering activity" requires (1) Engaging in at least two incidents of racketeering conduct, one of which shall have occurred after the effective date of this act and the last of which shall have occurred within 10 years (excluding any period of imprisonment) after a prior incident of racketeering activity; and
>
> *(2) A showing that the incidents of racketeering activity embrace criminal conduct that has either the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents.*

N.J.Rev.Stat. § 2C:41–1(d) (emphasis added). The court found that the second part of the New Jersey definition, which is not found in its federal counterpart, embodied the relationship requirement. 632 A.2d at 1259. As for continuity, the *Ball* court found that since the New Jersey legislature had excluded from its "Declaration of Policy and Legislative Findings" any mention of "long term" criminal activity, the legislature could not have intended for a "pattern" under New Jersey RICO to include a continuity element. 632 A.2d at 1259; *see* N.J.Rev.Stat. § 2C:41–1.1.

There are several reasons why the *Ball* court may be correct in holding that language of the New Jersey RICO statute indicates that the New Jersey legislature intended for the statutory definition of pattern to be complete. First, the additional language cures a logical inconsistency highlighted by the Supreme Court of the United States in *Sedima, supra.* In *Sedima,* the Court noted that "two of anything do not generally form a 'pattern,' " and therefore the statutory definition of a federal RICO pattern must be incomplete. 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. By including language that made "relatedness" part of the definition of "pattern," the New Jersey legislature addressed this concern. Second, the inclusion of this additional language shows that the legislature was concerned about clarifying the definition of "pattern," yet the legislature chose not to add a continuity element to that definition. Third, the court is correct in noting that in the purposes section of New Jersey RICO, the New Jersey legislature did not attempt to limit the applicability of New Jersey RICO to "long term" criminal activities. *See* N.J.Rev.Stat. § 2C:41–1.1.

There are, however, several arguments that work against this interpretation of the New Jersey RICO statute. First, the definition states that a "pattern ... *requires* ..." instead of stating that a "pattern ... *means* ...," leaving open the possibility that additional elements besides those stated in the statute could be necessary for a "pattern" to exist. As in the federal RICO definition section, New Jersey RICO uses the word "means" for several of its definitions, but for "pattern of racketeering activity" only does it use "requires." *Compare* 18 U.S.C. § 1961 *with* N.J.Rev.Stat. § 2C:41–1; *see also Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (noting that use of "requires" instead of "means" indicates that the definition of "pattern" was not complete).

Second, a definition of pattern which contained the relationship element was available elsewhere in the Organized Crime Control Act of 1970 ("Act") which contained federal RICO. *See* Pub.L. No. 91–452, tit. X, Sec. 1001(a), § 3575(e), 84 Stat. 922, 949–50 (1970) (codified at 18 U.S.C. § 3575(e) (repealed effective 1986)); *see also United States v. Stofsky,* 409 F.Supp. 609, 614 (S.D.N.Y.1973) (applying the pattern definition of § 3575(e) to federal RICO). A comparison of that definition and the definition in New Jersey RICO reveals that the legislature probably drew its language from that section of the

Organized Crime Control Act of 1970. *Compare* 18 U.S.C. § 3575(e) (repealed effective 1986) ("criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events") *with* N.J.Rev.Stat. § 2C:41–1(d)(2). In contrast, the continuity element was not defined anywhere in the Organized Crime Control Act of 1970. In addition, the continuity element only received brief mention in federal cases prior to the passage of New Jersey RICO. *See* cases cited *infra* part III.B.2.c. Therefore, the New Jersey legislature arguably did not include a continuity element in the definition of "pattern" simply because such an element was not on the legal horizon, not because the legislature explicitly rejected such an element.

And third, the purposes section of the Organized Crime Control Act of 1970 of which federal RICO was a part, does not limit federal RICO to "long term" criminal activities any more than the purpose section of New Jersey RICO limits New Jersey RICO in this manner. Pub.L. No. 91–452, 84 Stat. 922, 922–23 (1970). Federal courts have instead gone to the legislative history of federal RICO to find the continued criminal activity concern.[8] *See, e.g., Northwestern Bell, supra,* 492 U.S. at 239, 109 S.Ct. at 2900–01; *Sedima, supra,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

In conclusion, I find that both readings are plausible. On one hand, the New Jersey legislature might have intended the definition of pattern to be a complete definition which was not intended to be supplemented by later federal court clarifications. This position is supported by the fact that the legislature provided a definition that is more detailed and more closely conforms with the common understanding of a "pattern" than the federal definition. On the other hand, the legislature might have left open the possibility that elements other than those stated in the statute would be required for a "pattern" to exist. This position is supported by the use of the word "requires" and by the

availability of relationship language but not continuity language in a definition of "pattern" elsewhere in the Organized Crime Control Act of 1970.

Given that the appellate court's reading of the pattern definition is plausible, I do not believe the fact that I can find another plausible reading constitutes by itself "persuasive data" that would allow me to find contrary to the finding of the New Jersey appellate court. Therefore, I will proceed to an examination of the other grounds for the appellate court's decision.

#### b. *Legislative History*

The court in *Ball* also asserted that its position was supported by evidence in the New Jersey RICO legislative history. First, the court noted that the New Jersey legislative history, unlike the federal legislative history, makes no mention of a continuity requirement. Second, the court noted that during the committee hearings regarding the proposed New Jersey RICO Act, Committee Chairman Martin Herman responded to a question about the necessary elements in a "pattern" by declaring that "the activity does not have to be continuous, and that there could be 'interruptions.'" *Id.* 632 A.2d at 1259 (quoting *Committee Meeting Before the Assembly Judiciary, Law, Public Safety and Defense Committee on A–1079 (Racketeer Influenced and Corrupt Organization Act)* 7–8 (Oct. 30, 1980) (hereinafter *Committee Meeting*)). I do not find either of these arguments compelling or persuasive.

As for the first argument, the legislature was using federal RICO as a model and so arguably was implicitly adopting the same purposes and limitations as Congress had intended for federal RICO. As for the second argument, Chairman Herman did not address the issue of continuity as the federal courts have defined it. "Continuous" in the federal RICO context does not refer to a period of activity without interruptions but instead refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Northwestern Bell, su-*

---

8. The legislative history for New Jersey RICO is discussed in the next section.

*pra,* 492 U.S. at 241, 109 S.Ct. at 2902; *see also Barticheck v. Fidelity Union Bank/ First Nat. State,* 832 F.2d 36, 39–40 (3d Cir.1987). Therefore, Chairman Herman, in his comments, was not rejecting the continuity requirement, at least as it later came to defined in the federal courts.

The legislative history does contain a relevant comment that was not cited by the court in *Ball.* William F. Bolan, Jr., the Deputy Attorney General who was the person most familiar with the changes in the bill that were discussed at the October 30, 1980 committee meeting, commented on the definition of pattern. In describing what would constitute racketeering activity, Mr. Bolan stated that "[w]hat you need under RICO is two facets" and then proceeded to list the two elements that make up the New Jersey RICO definition of pattern. *Committee Meeting* at 2. As discussed below, however, this failure to include any mention of a continuity element was probably a result of the fact that federal case law up to that point in time had not focused on the requirement of continuity. *See* cases cited *infra* part III. B.2.c. However, the defendants have not produced and I have not found anything in the legislative history that indicates that the New Jersey legislature intended (1) that the term "pattern" include a continuity element, (2) that the definition of "pattern" was incomplete, or (3) that the definition was intended to conform with the definition in federal RICO as interpreted in subsequent federal cases.

In conclusion, the limited legislative history does not include any conclusive evidence regarding whether the legislature intended to include or exclude a continuity element. Therefore, the plausibility of the *Ball* court's reading is neither undermined nor supported by the legislative history.

### c. *Federal RICO Case Law in 1981*

 New Jersey courts generally assume that when the New Jersey legislature adopts complex statutes modelled after existing statutes in other jurisdictions, it also adopts the case law interpreting those statutes. *Ramseur, supra,* 524 A.2d at 228. But, as the *Ball* court notes, the continuity element did not become firmly established until the Supreme Court of the United States' 1989 decision in *Northwestern Bell, supra.* 632 A.2d at 1258. Therefore, it can not be assumed that the New Jersey legislature intended to include in New Jersey RICO the future federal case law that found a continuity element in the federal RICO definition of a "pattern of racketeering activity."

In fact, it does not appear that a continuity requirement was imposed by any federal court prior to the passage of New Jersey RICO in 1981, though five federal decisions had noted that some type of "continuity" requirement might exist. *See United States v. Dean,* 647 F.2d 779, 791–92 (8th Cir.1981), *reh'g on other grounds,* 667 F.2d 729 (8th Cir.), *cert. denied,* 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982); *United States v. Anderson,* 626 F.2d 1358, 1367 n. 16 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Weisman,* 624 F.2d 1118, 1122 n. 3 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980); *United States v. Campanale,* 518 F.2d 352, 363 n. 32 (9th Cir.1975), *cert. denied,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976); *United States v. DePalma,* 461 F.Supp. 778, 783 n. 6 (S.D.N.Y.1978). Therefore, it is likely that the New Jersey legislature was unaware of the continuity issue, and so it is logical to conclude that the legislature could not have intended to implicitly include or exclude the continuity element from the definition of pattern when it passed New Jersey RICO.[9]

### d. *Other Court Decisions*

The court in *Ball* also drew on the reasoning of courts in several other states with similar pattern definitions that had also found that continuity was not required under their state RICO statutes. 632 A.2d at 1258–

9. The remarks of Chairman Herman, which might be interpreted now to show an understanding of continuity which is at odds with the current federal court definition of that term, are further evidence that the current continuity requirement was not contemplated by the New Jersey legislature when it enacted New Jersey RICO. *See supra* part III.B.2.b.

59 (citing *Dover v. State,* 192 Ga.App. 429, 385 S.E.2d 417, 420–21 (1989); *Computer Concepts Inc. v. Brandt,* 310 Or. 706, 801 P.2d 800, 807–09 (1990)). In *Dover,* the Court of Appeals of Georgia held that the Georgia legislature intended for a pattern of racketeering activity to require two racketeering acts that were part of the same scheme but not to require any type of continuity. 385 S.E.2d at 421. It rested its decision solely on the definition of "pattern of racketeering activity" contained in the Georgia RICO statute:

> "Pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents....

Ga.Code Ann. § 16–14–3(8) (Michie). In *Computer Concepts,* the Supreme Court of Oregon also found that Oregon's RICO statute did not require continuity in order for a pattern of racketeering activity to exist. It rested its decision partially on the definition of pattern contained in the statute:

> "Pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, accomplices, victims or methods of commission or otherwise are interrelated by distinguishing characteristics, including a nexus to the same enterprise, and are not isolated incidents....

Or.Rev.Stat. § 166.715(4). The Court also rested its decision on several indications in the Oregon RICO's legislative history that a continuity requirement could not have been intended, though it found that as a whole the legislative history was inconclusive on this issue. These indications included reference solely to the terms of the statutory definition in discussions of "pattern," the general bias toward liberal construction in order to ensure relief to victims, the use of examples involving "patterns" occurring over short time periods, and the lack of any case law at the time of passage that had imposed a continuity requirement.

While the Oregon and Georgia statutes use the word "means" instead of "requires," in all other respects the definitions of "pattern of racketeering activity" are the same as the definition in New Jersey RICO. And while the New Jersey legislative history is less informative than Oregon's legislative history, it does not contradict the *Ball* court's reading of New Jersey RICO. The Oregon Court's argument about the lack of case law that required continuity is not very persuasive given that the legislature could therefore not have intended to either exclude or include a continuity requirement, but that does not destroy the Court's position since it rests on the language of the state statute as well. Therefore, the state court decisions in Georgia and Oregon support the *Ball* court's holding that continuity is not required for a "pattern" to exist under New Jersey RICO.

The court in *Ball* rejected the holding of courts in two other states that found continuity required even though their states' RICO statutes had definitions very similar to the definitions found in the New Jersey, Georgia, and Oregon statutes. The *Ball* court found that the reasoning of these states was uncertain since they appeared to simply assume that federal case law was applicable. 632 A.2d at 1258 (citing *Schremmer v. State,* 578 So.2d 392, 393 (Fla.Dist.Ct.App.1991); [10] *Kollar v. State,* 556 N.E.2d 936, 940–41 (Ind.Ct. App.1990)).[11] In both cases, the state courts appear to have relied on federal case law simply because their state RICO statutes were modelled on federal RICO. I could

---

**10.** The Florida RICO statute provides in relevant part:

> "Pattern of racketeering activity" means engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission, or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents....

Fla.Stat. ch. 895.02(4).

**11.** The Indiana RICO statute provides in relevant part:

> "Pattern or racketeering activity" means engaging in at least two (2) incidents of racketeering activity that have the same or similar intent, result, accomplice, victim, or method of commission, or that are otherwise interrelated by distinguishing characteristics that are not isolated incidents.

Ind.Code § 35–45–6–1.

find only one other state court decision that addressed this issue while applying a state RICO "pattern" definition similar to New Jersey RICO's definition, and that court also appears to rely on federal law simply because the state RICO statute was modelled on federal RICO. *See Eliopulos v. Knox,* 123 Idaho 400, 848 P.2d 984 (1992).[12] Therefore, none of these other state cases provides persuasive data to counter the *Ball* court's reading of New Jersey RICO.

Prior to the *Ball* decision, federal and New Jersey state court decisions applied federal case law to the question of what constitutes a pattern under New Jersey RICO. These courts also did not give a rationale for that application other than the fact that New Jersey RICO was modelled on federal RICO. *See, e.g., Kredietbank, N.V. v. Joyce Morris, Inc.,* 1986 WL 5926, at *3 n. 2 (D.N.J. Jan. 9, 1986), *aff'd,* 808 F.2d 1516 (1986); *Sammon v. Watchung Hills Bank,* 259 N.J.Super. 124, 611 A.2d 674, 677 (Law Div.1992).[13] In addition, some courts have noticed that New Jersey RICO appears by its language to be broader than federal RICO in some respects, though this analysis had not been extended to the definition of "pattern" prior to the decision of the *Ball* court. *See Federal Ins. Co. v. Ayers,* 772 F.Supp. 1503, 1508 (E.D.Pa. 1991); *State v. Passante,* 225 N.J.Super. 439, 542 A.2d 952, 953–54 (Law Div.1987).

In sum, the decisions by other courts on the continuity issue either support the *Ball* court's holding or provide no convincing rationale for rejecting that holding. Those courts, in New Jersey and elsewhere, that have found that continuity is required have failed to give any reasoning to support their decisions except that their state statutes are modelled after federal RICO. On the other hand, the courts that have found continuity is not required have based their holdings on the same grounds upon which the *Ball* court relied and have followed similar reasoning.

▆ Having completed my examination of the various grounds for the *Ball* court's decision that under New Jersey RICO a pattern of racketeering activity does not require continuity, I find that the decision is reasoned and not contradicted by other persuasive data. The *Ball* court's reading of the New Jersey RICO definition of "pattern," while not the only possible reading, is plausible given the language of the statute, its legislative history, the state of federal RICO law at the time of New Jersey RICO's passage, and decisions in other states with similar state RICO definitions of "pattern." Therefore, I find that plaintiff's New Jersey RICO claims cannot be dismissed for failing to sufficiently allege a pattern of racketeering activity.

### C. *Other Grounds for Dismissal*

In their briefs on the instant motion for reconsideration and reinstatement, the defendants have raised some of the other grounds for dismissal that were argued in the original motion to dismiss the amended complaint.[14] Plaintiff has responded to these arguments. Since these other grounds were fully briefed and orally argued before me previously, and the parties appear willing to have me reconsider them at this time, I will do so.

### 1. *Standard of Review*

▆ In determining whether or not to grant a motion to dismiss under Fed.R.Civ.P.

---

**12.** The Idaho RICO statute provides in relevant part:

"Pattern of racketeering activity" means engaging in at least two (2) incidents of racketeering.conduct that have the same or similar intents, results, accomplices, victims or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated incidents. . . .
Idaho Code § 18–7803(d).

**13.** The court in *Sammon* rested its decision on *Matter of Integrity Ins. Co.,* 611 A.2d at 677. The court in *Matter of Integrity Ins. Co.,* found federal case law particularly applicable because to New

Jersey RICO because "the New Jersey RICO statute 'borrows' its structure, purpose and remedies from federal RICO." 245 N.J.Super. 133, 584 A.2d 286, 287 (Law Div.1990).

**14.** This motion was the motion of defendants Nowalk & Associates, Inc., Richard Nowalk, Michael A. Hudy, John Tedesco, Barry Weshnak, Jeffrey Walsh, William Greenberg and Peter H. Wegener to dismiss the amended complaint. *See* Document No. 21. This motion is applicable to the Counts Six through Ten of the second amended complaint because these counts are the same as Counts Six through Ten of the amended complaint.

12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted, I am required to accept "as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). Dismissal is appropriate under Rule 12(b)(6) only when a plaintiff has alleged no set of facts which, if proved, would entitle the plaintiff to relief. *Id.*

### 2. *Person/Enterprise Distinction*

Defendants Nowalk & Associates, Inc., Richard Nowalk, Michael A. Hudy, John Tedesco, Barry Weshnak, Jeffrey Walsh, William Greenberg and Peter H. Wegener ("Motion to Dismiss Defendants") claimed in their motion to dismiss the amended complaint that plaintiff had failed to allege an enterprise that was sufficiently distinct from the defendants, as required for a federal or New Jersey RICO claim to exist under 18 U.S.C. § 1962(c) or N.J.Rev.Stat. § 2C:41–2(c).[15] Counts Six, Seven and Nine of the second amended complaint allege violations of N.J.Rev.Stat. § 2C:41–2(c). The "enterprises" alleged under Counts Six, Seven and Nine are respectively JHC, the Board of Directors of JHC, and an association in fact of all of the defendants.[16] Second amended complaint, at ¶¶ 140, 146, 152. The persons sued under each of these counts are various of the defendants, who were officers, directors and agents of JHC at all times relevant; JHC is not a defendant in this instant case. *See* second amended complaint, at ¶¶ 141, 147, 153.

The federal courts are split in their rulings on the question of whether the officers, directors, other employees or agents of a corporation can be distinct from the corporation when those same officers and others are the persons and the corporation is the enterprise

in a RICO claim. *Compare Glessner v. Kenny*, 952 F.2d 702, 713 (3d Cir.1991) (holding that employees and officers of a corporation are not distinct from the corporate "enterprise" when their alleged racketeering activity was entirely on behalf of the corporation) *with Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir.1992) (limiting finding of no distinctiveness to cases where either (1) a corporation is both the defendant and the alleged enterprise or (2) the defendant is the sole owner and employee of a non-incorporated sole proprietorship that is the alleged enterprise); *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 45 (1st Cir.1991) ("[o]fficers of a corporate enterprise may be personally liable for civil RICO violations if they conducted their employer's affairs through a proscribed pattern of racketeering activity").

No New Jersey court has addressed this corporation/employee aspect of distinctiveness. In fact, the New Jersey courts are currently split over whether New Jersey RICO even requires distinctiveness in the first place. *Compare Maxim Sewerage v. Monmouth Ridings*, 273 N.J.Super. 84, 640 A.2d 1216, 1221 (Law Div.1993) (no distinctiveness required); *State v. Passante*, 225 N.J.Super. 439, 542 A.2d 952, 953 (Law Div. 1987) (same) *with Rebish v. Great Gorge*, 224 N.J.Super. 619, 541 A.2d 237, 241 (App.Div. 1988) (distinctiveness required); *Goody Products, supra*, 574 A.2d at 1034; *State v. Kuklinski*, 234 N.J.Super. 418, 560 A.2d 1295, 1297 (Law Div.1988) (same).

I find it unnecessary to resolve the issue of whether distinctiveness is required under N.J.Rev.Stat. § 2C:41–2(c) because under a broad reading of the New Jersey RICO "enterprise" definition, the defendants and JHC are sufficiently distinct. A broad reading of "enterprise" is required by the

---

**15.** In response to the motion for reconsideration and reinstatement, some of the defendants have raised this issue again as grounds for dismissing Counts Six, Seven and Nine of the second amended complaint. *See* Memorandum of Wegener, Tomasek and Bathgate, Wegener, Wouters & Neumann, P.C., at 12–17. Other defendants have raised it only as to Counts Seven and Nine of the second amended complaint. *See* Brief in opposition of Tedesco, Greenberg and Weshnak, at 18–20. The remaining defendants, Nowalk,

Hudy, and Nowalk & Associates, Inc., joined in both briefs filed by the other defendants in opposition to the motion for reconsideration and reinstatement.

**16.** Under both federal and New Jersey RICO, the definition of enterprise includes "any union or group of individuals associated in fact although not a legal entity...." 18 U.S.C. § 1961(4); N.J.Rev.Stat. § 2C:41–1(c).

*Ball* decision and by the legislative history of New Jersey RICO. While the court in *Ball* did not address the issue of distinctiveness, it stated that "the New Jersey RICO definition of 'enterprise' is more expansive than that contained in the federal version." 632 A.2d at 1240. This statement is supported by the legislative history of New Jersey RICO; William F. Bolan, Jr. stated during the hearings on New Jersey RICO that several amendments were added to New Jersey RICO in order to "broaden the definition of enterprise." *See Committee Meeting,* at 7. The court in *Ball* also stated generally that "there are significant differences in their expressed purposes which demonstrate our Legislature's willingness to fashion a state RICO law even broader in scope than its federal counterpart." *Id.* 632 A.2d at 1239.

■ I find that the Supreme Court of New Jersey would adopt a broad definition of the term "enterprise" under New Jersey RICO, and so it would find there was distinctiveness between officers, directors, employees and agents of a corporation and the corporation itself, even when those same officers, directors, employees, and agents are performing the alleged racketeering activity on behalf of the corporation. Therefore, Count Six of the second amended complaint alleges persons who are sufficiently distinct from the alleged RICO enterprise to support a claim under N.J.Rev.Stat. § 2C:41–2(c).

■ Count Seven of the second amended complaint alleges as persons all of the defendants who served as directors of JHC (hereinafter "Directors"),[17] and as the enterprise the Board of Directors of JHC. Second amended complaint, at ¶ 146. This is not a case where the defendant person is exactly the same as the alleged enterprise, as in the case where a given corporation is both a defendant and the enterprise. Rather this is a case where the individual defendants make up the enterprise and acted solely in their

capacities as members of it. This type of relationship is similar to that between the defendants in *Ball* and their "enterprise." In *Ball,* various individuals associated with one another in order to provide and operate illegal dumping sites; the individuals shared a common purpose but their "enterprise" had no formal structure or hierarchy and no purpose beyond the illegal dumping scheme. *Id.* 632 A.2d at 1240. While here the Board of Directors also had legitimate goals and a formal structure, plaintiff has sufficiently alleged that the members of the Board acted together for a common illegal goal of defrauding plaintiff. *See* second amended complaint, at ¶¶ 26, 147. Therefore, I find that Count Seven of the second amended complaint alleges persons who are sufficiently distinct from the alleged RICO enterprise to support a claim under N.J.Rev.Stat. § 2C:41–2(c).

■ Count Nine of the second amended complaint allege as persons defendants Nowalk & Associates, Inc., Hudy, and the Directors and as the enterprise an association in fact among them. *Id.* at ¶¶ 152–53. For the same reasons that I find that Count Seven alleges persons who are distinct from the alleged enterprise, I find that Count Nine of the second amended complaint also alleges persons who are sufficiently distinct from the alleged enterprise to support a claim under N.J.Rev.Stat. § 2C:41–2(c).

### 3. *Predicate Acts*

A pattern of racketeering activity under New Jersey RICO requires "at least two incidents of racketeering conduct." N.J.Rev. Stat. § 2C:41–1(d)(1). In order to meet this requirement, plaintiff has alleged that the defendants violated federal mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, violated the National Stolen Property Act, 18 U.S.C. §§ 2514–15, and committed theft.[18]

---

**17.** Defendants Johnson, Nowalk, Greenberg, Tedesco, Weshnak, Walsh, and Wegener. Second amended complaint, at ¶ 17.

**18.** Plaintiff also alleged that the defendants' actions constituted obstruction of justice, fraud connected with a case under Title 11 of the United States Bankruptcy Code, and witness intimidation. Second amended complaint, at

¶¶ 142, 147, 153. I have previously determined that plaintiff's complaint, when viewed in the light most favorable to plaintiff, did not support these additional allegations. Memorandum, at 11–12.

Second amended complaint, at ¶¶ 142, 147, 153. These activities all constitute racketeering activity under New Jersey RICO. *See* N.J.Rev.Stat. § 2C:41–1(1)(n) & (2).

The Motion to Dismiss Defendants argued in their motion to dismiss the amended complaint that the alleged activities of the defendants did not constitute these alleged crimes. Defendants Tedesco, Greenberg and Weshnak, in their response to the instant motion for reconsideration and reinstatement, again raise this argument. Therefore, I will examine plaintiff's allegations so as to determine whether, when viewed in the light most favorable to plaintiff, they constitute the alleged crimes.

### a. *Mail and Wire Fraud*

Plaintiff has made six allegations of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341,[19] 1343[20] which included using the mails and wires (a) to apply for membership in PRSCO by fraudulent misrepresentations; (b) to make orders over the telephone first to establish credibility and then (c) to make orders for which defendants allegedly never intended to pay; (d) to make false representations on or about October 3 and 9, 1989 that certain checks had been mailed when they were not; (e) on or about October 23, 1989 to transmit the prepackaged business plan to PRSCO and other creditors; and (f) a general allegation of similar uses of the mails and interstate wires to defraud eight other vendors of JHC. Second amended complaint ¶¶ 29–33, 38–39, 50–64, 69–82.

The defendants argue (a) that credit application is not alleged to have contained any false statements, and that the current defendants did not know of or otherwise participate in or direct the later phone communications associated with the application; (b) that plaintiff admits that the initial orders were all promptly paid; (c) that the later orders did not contain any false statements; (d) that the current defendants did not know of or otherwise participate in or direct the false representations regarding whether certain checks had been mailed; (e) that the plan communicated on October 23, 1989 was not false, and under any conditions occurred after all goods had been obtained from plaintiff.

Both the mail and wire fraud statutes require proof of (1) the defendant devising or intending to devise (2) a scheme or artifice to defraud, (3) the use of the mails or wires for the purpose of executing or attempting to execute the scheme or artifice, and (4) knowledge by the defendant of that use. 18 U.S.C. §§ 1341, 1343. The defendants' arguments that rest on the fact that the alleged mailings and wire communications were not false are not supported by current law. The mailings themselves need not contain any misrepresentations: " 'innocent' mailings—ones that contain no false information—may supply the mailing element." *Schmuck v. United States*, 489 U.S. 705, 715, 109 S.Ct. 1443, 1450, 103 L.Ed.2d 734 (1989); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413–14 (3d Cir.), *cert. denied* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). This holding is also applicable to wire communications. *See Carpenter v. United States*, 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d

**19.** Section 1341 provides in relevant part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**20.** Section 1343 provides in relevant part:
Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

275 ("[t]he mail and wire fraud statutes share the same language in relevant part, and accordingly we apply the same analysis to both sets of offenses").

The defendants also argue that they did not know of, participate in, or direct some of the allegedly false communications. This argument contradicts the express allegations of the second amended complaint. With regard to the phone communications made to support JHC's application to join PRSCO, the complaint states that the allegedly false statements were made "with the knowledge and authorization of and at the direction of the Board and [defendant] Hudy" as part of the fraudulent scheme devised by the defendants. Second amended complaint, at ¶ 32. With regard to the phone communications regarding whether certain checks had been mailed, the second amended complaint states that those communications were made at the express direction of the defendants. *Id.* at ¶¶ 52, 54.

 Under any conditions, the defendants need not have been the actual individuals who used the mails and wires, nor need they have known of the specific communications; it is sufficient under the mail and wire fraud statutes that the use of the mails and wires by others occurred in the ordinary course of business related to the fraudulent scheme, or was foreseeable as part of the furtherance of the fraudulent scheme. *United States v. Bentz*, 21 F.3d 37, 40–41 (3d Cir.1994). Plaintiff has alleged that the defendants Nowalk & Associates, Inc., Hudy, and the Directors formulated a plan to order substantial quantities of goods as part of the fraudulent scheme. Second amended complaint, at ¶ 26. Given that PRSCO and many of the other vendors were located in different states from JHC, it is reasonable to infer that the defendants could foresee that such orders would require communication to be made either through the mails or the wires. *See id.* at ¶¶ 3, 4, 81. The same inference can be made from defendants Nowalk & Associates, Inc., Hudy, and the Directors' decision to apply to become a member of PRSCO, to order JHC management to mislead suppliers, and to prepare a business

plan for communication to PRSCO and other vendors. *Id.* at ¶¶ 28, 50, 55, 74.

 I have already held that plaintiff has made sufficient allegations to support a common law claim of fraud. Memorandum, at 16. I also find that plaintiff has made sufficient allegations to support a claim that the mail and wire communications alleged in the complaint were made to further that fraud. Having addressed the arguments that defendants raise to challenge the sufficiency of the allegations to constitute mail and wire fraud, I find that plaintiff has successfully pled allegations that constitute two or more violations of the federal mail and wire fraud statutes. Therefore, the New Jersey RICO requirement of two or more acts of racketeering activity has been met in plaintiff's second amended complaint.

### b. *National Stolen Property Act and Theft*

Since I find that plaintiff has alleged two or more acts of racketeering activity based on plaintiff's allegations of mail and wire fraud, I do not reach defendants' arguments regarding the other alleged acts of racketeering activity.

### 4. *Standing*

 The Motion to Dismiss Defendants claimed in their motion to dismiss the amended complaint that plaintiff lacked standing to bring federal or New Jersey RICO claims. None of the defendants reasserted this argument in connection to the instant motion for reconsideration and reinstatement, so I will only briefly consider it.

New Jersey RICO provides that "[a]ny person damaged in his business or property by reason of a violation of N.J.S. 2C:41–2 may sue therefor in any appropriate court." N.J.Rev.Stat. § 2C:41–4(d). Section 2C:41–2 provides in relevant part that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity . . . ." N.J.Rev.Stat. § 2C:41–2(c).

Plaintiff alleged in the second amended complaint that as of October 30, 1989, JHC owed PRSCO $565,743.10. Second amended complaint, at ¶ 57. PRSCO and two other unsecured creditors of JHC filed an involuntary bankruptcy petition against JHC on or about November 6, 1989, presumably before any of this outstanding debt had been paid. *See id.* at ¶ 83. As of the date of the amended complaint, plaintiff has not received any proceeds from the bankruptcy proceedings and "it is highly unlikely that" they will. *Id.* at ¶ 104. As has already been discussed, the failure to pay, reading the second amended complaint in the light most favorable to plaintiff, was the result of a pattern of racketeering activity in violation of N.J.Rev.Stat. § 2C:41–2. Therefore, I find that plaintiff has standing to bring a claim under New Jersey RICO.

### 5. *Aiding and Abetting*

In Count Eight of the second amended complaint, plaintiff alleges that defendants Hudy and Nowalk & Associates, Inc. aided and abetted the New Jersey RICO violations alleged in Count Seven of the second amended complaint. Count Seven of the second amended complaint alleges that the defendants who were directors of JHC violated New Jersey RICO through the enterprise of the Board of Directors of JHC. Defendants argue that plaintiff has only alleged that Hudy and Nowalk & Associates, Inc. performed professional services for the Board of Directors of JHC, and therefore Hudy and Nowalk & Associates, Inc. did not participate sufficiently in the RICO pattern of racketeering activity to constitute aiding and abetting.

New Jersey RICO requires, as does its federal counterpart, that for a person to be liable under RICO they must "conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity...." N.J.Rev.Stat. § 2C:41–2(c); *see also* 18 U.S.C. § 1962(c). The Supreme Court of the United States has recently held that for a person to be subject to liability under 18 U.S.C. § 1962(c), that person must meet a "operation or management test" which re-

quires that that person "have some part in directing [the enterprise's] affairs." *Reves v. Ernst & Young,* — U.S. —, —, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). The Court of Appeals for the Third Circuit has held, relying on *Reves,* that when an accounting firm performs audits, issues opinions, attends board of director meetings, and provides other accounting and consulting services to the alleged corporate enterprise, it does not "conduct or participate" in the corporate enterprise's affairs sufficiently to support RICO liability under 18 U.S.C. § 1962(c). *Univ. of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993).

In the second amended complaint, plaintiff alleges that Nowalk & Associates, Inc. and Hudy, with the Directors, "formulated" the alleged fraudulent scheme. Second amended complaint, at ¶ 26. Plaintiff also alleges that Nowalk & Associates, Inc. and Hudy, with the Directors, selected PRSCO as a target of the alleged scheme, and, in August of 1990, "formulated and adopted a formal policy for JHC to accelerate purchases of inventory to acquire as much inventory as possible from suppliers such as PRSCO before the growing unpaid indebtedness to these suppliers forced them to stop selling to JHC." *Id.* at ¶¶ 29, 44. These actions go well beyond the normal provision of accounting services, unlike other actions alleged in the second amended complaint, such as preparing projections, financial statements, and a business plan, communicating that business plan to others, and negotiating on JHC's behalf with creditors. *See id.* at ¶¶ 43, 50, 55, 74, 76, 78–79, 82. Therefore, I find that plaintiff has alleged sufficient facts to support a claim that defendants Nowalk & Associates, Inc. and Hudy aided and abetted the defendants in the activities detailed in Count Seven.

### 6. *Conspiracy*

In Count Ten of the second amended complaint, plaintiff raised a claim against defendants Nowalk & Associates, Inc., Johnson, Nowalk, Hudy, Tedesco, Weshnak, Walsh, Greenberg and Wegener under N.J.Stat.Ann. § 2C:41–2(d) for conspiracy to violate N.J.Stat.Ann. § 2C:41–2(c). The ar-

gument of defendants for dismissing this count rested on the other New Jersey RICO counts being dismissed. Since I have reinstated the other New Jersey RICO counts and find that the second amended complaint states sufficient factual allegations to support a claim of conspiracy under New Jersey RICO, I will reinstate Count Ten.

## IV. CONCLUSION

The New Jersey appellate court has provided a plausible reading of New Jersey RICO with regard to whether a "pattern of racketeering activity" requires an element of "continuity." While the language of the statute itself could lend itself to other readings, nothing in the language, the legal landscape at the time of the statute's passage, the statute's legislative history, or in other cases interpreting similar statutes persuasively counters the appellate court's reading. Therefore, in light of the deference I must give to the appellate court's interpretation, I find that the basis for my earlier decision to dismiss the New Jersey RICO counts of the complaint was incorrect and so those counts must be reinstated. In addition, I find that the alternate grounds for dismissal asserted by the defendants do not provide a basis for dismissing those counts.

An appropriate Order follows.

### ORDER

AND NOW, this 27th day of September, 1994, upon consideration of the motion of plaintiff to reconsider the dismissal of Counts Six through Ten of the second amended complaint and to reinstate those same counts (Document No. 94) and defendants' replies thereto, it is hereby **ORDERED** that:

1) The motion of plaintiff for reconsideration is **GRANTED.**

2) The motion of plaintiff for reinstatement is **GRANTED. IT IS FURTHER ORDERED** that Counts Six through Ten of the second amended complaint (Document No. 29) are **REINSTATED** as against defendants Nowalk & Associates, Inc., Richard G. Nowalk, Michael A. Hudy, John Tedesco, Barry Weshnak, William Greenberg and Peter H. Wegener.

3) Having considered the alternate grounds for dismissal raised by the defendants in their replies to the instant motion and in the joint motion by defendants Nowalk & Associates, Inc., Richard Nowalk, Michael A. Hudy, John Tedesco, Barry Weshnak, Jeffrey Walsh, William Greenberg and Peter H. Wegener to dismiss the amended complaint (Document No. 21), the motion of defendants to dismiss the amended complaint is **DENIED** as to Counts Six through Ten of the second amended complaint.

**IT IS FURTHER ORDERED** that defendants shall file their answer to the reinstated counts no later than October 20, 1994.