**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3559-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARVIN A. COLEMAN,

    Defendant-Appellant.

_____

Submitted November 3, 2025 – Decided November 12, 2025

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 19-07-0934.

Kareem J. Crawford, attorney for appellant.

LaChia L. Bradshaw, Burlington County Prosecutor, attorney for respondent (Alexis R. Agre, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After a jury convicted defendant Marvin A. Coleman of first-degree knowing and purposeful murder, N.J.S.A. 2C:11-3(a)(1) and 2C:11-3(a)(2); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1(a)(1); second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a)(1); and second degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), the court sentenced him to an aggregate life sentence without the possibility of parole.[1]  Before us defendant raises the following arguments challenging his convictions:

> POINT I
>
> [THE] TRIAL JUDGE ERRED BY ADMITTING [AN] EXTREMELY GORY AND REPETITIVE PHOTO OF [THE] VICTIM'S HEAD . . . .
>
> POINT II
>
> DEFENSE COUNSEL WAS INEF[F]ECTIVE AS [COUNSEL] SHOULD HAVE PUSHED FURTHER TO DEMONSTRATE THERE WERE OTHER JUST AS VIABLE SUSPECTS AS THE APPELLANT.

---

[1]  We note, in its merits brief, the State informs us that defendant's first trial resulted in a hung jury and mistrial.  The record before us, however, includes only the transcript from the testimony of four witnesses called by the State during that proceeding.

A-3559-22

POINT III

IMPROPER DEFENSE COUNSEL CROSS EXAMINATION BROUGHT IN DAMAGING EVIDENCE WHICH THE JURY WOULD NOT HAVE HEARD.[2]

I.

Defendant's convictions relate to his robbery and murder of Maribely Lopez, who defendant contacted ostensibly to purchase a phone she had listed for sale on OfferUp, an online marketplace. After communicating during the course of the day, Lopez and defendant arranged to meet in Willingboro Township.

Lopez arrived at the agreed-upon address at ten o'clock p.m., described in the trial record as a vacant home whose driveway neighbors would leave cars in to discourage squatting. Lopez apparently did not see defendant at the location, resulting in a tense back-and-forth text message exchange in an attempt to finalize the transaction. Within an hour of arriving at the Willingboro Township location, Lopez dialed 9-1-1. The recording of the 9-1-1, although containing no words, captured the ringing of car door chimes.

---

2 We have reconstituted defendant's point headings to correspond to the manner in which we address the issues.

A-3559-22

A neighbor, arriving home from work, noticed Lopez's car parked outside the vacant home. Just moments before the 9-1-1 call, the neighbor heard a popping sound she associated with gunshots.

The next morning, she observed Lopez's car outside still idling in front of the vacant house. When she went to investigate, she discovered Lopez dead inside her car, appearing to have suffered a gunshot wound to the head. Police arrived shortly thereafter, confirmed Lopez's identity, and discovered a phone in her lap. A search of the phone revealed text messages between Lopez and another OfferUp user, later identified as defendant, who had expressed interest in purchasing the phone. Police then proceeded to defendant's nearby residence which was associated with cellular records connected to the phone number and OfferUp account to which Lopez had been messaging.

The police searched defendant's room, resulting in the seizure of an unlocked cellphone. The police also seized, in defendant's brother Marcus Coleman's room, bullets and shell casings. A forensic analysis of Lopez's phone, and the phone found in defendant's room, evidenced regular communications between the devices leading up to the homicide, including real-time OfferUp messages and Google Maps location tracking. Further, digital evidence on the cellphone revealed internet searches related to weapons, fingerprints, OfferUp

4

account deactivation, and details regarding homicide investigations. The phone also contained a photograph of defendant holding a gun taken shortly before the incident.

II.

In defendant's first point, he contends the trial court erred in admitting a single photograph,[3] introduced during the trial testimony of the forensic pathologist and medical examiner who examined Lopez, capturing Lopez placed in a body bag with a gunshot wound to the left side of her head with blood emanating from her nose and face. Defendant claims the photograph was "extremely graphic and gory [and] offer[ed] no probative value to the body of evidence." Defendant maintains the court abused its discretion in admitting the photograph because, under N.J.R.E. 403, it "is simply [overkill] to prejudice the jury to act on emotion, instead of logic and common sense." We disagree.

At trial, defendant's counsel objected to the introduction of the photograph as "emotionally riveting" and duplicative of other photographs introduced by the State. In response, the State contended the photograph was relevant to "depict the entrance wound to the left side of [Lopez's] head before her head was cleaned

---

[3] Notably, neither party has included the challenged photograph in the record before us.

A-3559-22

up," consistent with the trial testimony. The State also noted the court instructed the jury of the graphic nature of the evidence in this case, the State had narrowed down photographs of the victim's body from more than one hundred to four, and the medical examiner testified to his observations at the scene and at his office, consistent with the photograph. The court acknowledged defense counsel's concern but admitted the photograph, "given the circumstances [to] what[ has] been testified to and what the jury has been made aware of."

It is well-settled that the decision to admit photographs of a victim into evidence is left to the discretion of the trial court, and that decision will not "be reversed in the absence of a palpable abuse thereof." State v. Sanchez, 224 N.J. Super. 231, 249 (App. Div. 1988) (citing State v. Thompson, 59 N.J. 396, 420-21 (1971)). "Pictures of a murdered body are likely to cause some emotional stirring in any case, but that of itself does not render them incompetent." Ibid. (citations omitted). "The presence of blood and gruesome details [in photographs] are not ipso facto grounds for exclusion." State v. Morton, 155 N.J. 383, 455-56 (1988) (quoting State v. DiFrisco, 137 N.J. 434, 450 (1994), cert. denied, 516 U.S. 1129 (1996)). Photographs are inadmissible only when their probative value is substantially outweighed by the risk "to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue of guilt or

6

innocence." Sanchez, 224 N.J. Super. at 250-51 (citing State v. Micheliche, 220 N.J. Super. 532, 545 (App. Div.), certif. denied, 109 N.J. 40 (1987))

We are convinced the court's decision to admit the photograph did not constitute a palpable abuse of its discretion, as its probative value was not substantially outweighed by any prejudicial effect on defendant. The photograph was probative of how the medical examiner discovered Lopez and the nature of the gunshot wound and her injuries, consistent with the trial testimony. The fact that the photograph may overlap in relevance with other photographs introduced by the State does not justify its exclusion, and we note that although all pictures of a murdered body likely cause emotional stirring, their unpleasantness does not render them automatically inadmissible. See Morton, 155 N.J. at 455-56; Sanchez, 224 N.J. Super. at 249-50.

Here, the jury was properly instructed on the nature of the photographs, and we further note the photograph in question was consistent with the State's theory of how Lopez was murdered, specifically that defendant purposefully and knowingly shot her. The fact that the photograph was gruesome does not mean it was not legitimately a part of the State's proof of defendant's criminal act and its consequences.

7

## III.

In his second and third points, defendant asserts that his counsel's performance was constitutionally ineffective under the two-part test detailed in Strickland v. Washington, 466 U.S. 668, 687 (1984).[4] Specifically, in Point II, defendant maintains his trial counsel's performance was deficient because he did not adequately argue other suspects could have committed the crime. Defendant asserts his trial counsel "should have pushed harder" for a third-party guilt defense with respect to his brother and step-brother, Marcus Coleman and Jeffrey Flynn. Defendant maintains both had access to his bedroom and the cellphone used to communicate with Lopez. Defendant claims trial counsel "never even questioned [Flynn or Coleman] or questioned anybody else about them." Finally, defendant states counsel failed to cross-examine properly Jennifer Smith, a manager for the legal response center at Comcast. Defendant asserts she "would have been the perfect witness [to testify] . . . that anyone in the Coleman house possibly [could] have used [defendant's] phone."

---

[4] To establish ineffective assistance of counsel, a convicted defendant must satisfy the two-part test enunciated in Strickland, by demonstrating that: (1) counsel's performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. Strickland, 466 U.S. at 687. The Strickland test has been adopted for application under our State constitution in New Jersey. State v. Fritz, 105 N.J. 42, 58 (1987).

A-3559-22

In Point III, defendant asserts trial counsel's cross-examination of the neighbor who heard a gunshot, also constituted ineffective assistance of counsel. During that examination, trial counsel asked the neighbor about the initial "pop" that she heard. In response, the neighbor testified "[she] used to hear [gunshots] a lot, so [she] just didn't bother to go out. Gunshots would go on all the time." Defendant criticizes his counsel's examination and claims, "[d]efense counsel should not open up doors with incriminating evidence against their own client" and "[t]his is the kind of prejudice discussed in Strickland."

We decline to address defendant's PCR-related claims and do so because as a general matter, "ineffective assistance of counsel claims are not entertained on direct appeal 'because such claims involve allegations and evidence that lie outside the trial record.'" State v. Allah, 170 N.J. 269, 285 (2002) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)); see also State v. Mohammed, 226 N.J. 71, 81 n.5 (2016) (declining to address an ineffective-assistance claim raised first on appeal because such was "better suited for review on [PCR]"). "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." Preciose, 129 N.J. at 460 (citations omitted); see also State v. Sparano, 249 N.J. Super. 411, 419 (App.

Div. 1991) ("Generally, a claim of ineffective assistance of counsel cannot be raised on direct appeal.").

The more appropriate forum to raise such claims is in a petition for post-conviction relief where an adequate, reviewable record can be developed. See State v. Miller, 216 N.J. 40, 70 n.7 (2013); State v. McDonald, 211 N.J. 4, 29-30 (2012). That is particularly true where, as here, the allegations of ineffective assistance appear to implicate strategic decisions of trial counsel that may necessitate an evidentiary hearing. The record before us does not include, for example, certifications or testimony as to any discussions between defendant and his trial attorney concerning defendant's statements about third-party guilt and the cross-examination of Jennifer Smith and the neighbor. Furthermore, because defendant raises his ineffective assistance claims for the first time in this appeal, the trial court did not have an opportunity to make findings regarding the Strickland/Fritz test. In reaching this result, we expressly preserve defendant's right to make his arguments to a PCR court.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

10

A-3559-22